BANK v. CUMMINGS.

(*Nashville.* February 10, 1891.) ·

1. BANKS AND BANKING.    *Case in judgment stated.*

Cummings & Bledsoe shipped from Petersburg, Tenn., to Atlanta, Ga.,
· five car-loads of wheat which had been contracted to the "Tollison
Commission Company," of the latter city. They took from the
carrier five separate bills of lading—one for each car-load—to them-
selves or assigns, with indorsement on each: "Notify Tollison Com-
mission Company." C. & B. drew upon said company five drafts—
one for each car-load—payable to their own order three days after
sight. These drafts, with said bills of lading attached, were delivered
by C. & B. to their bankers at Columbia, Tenn., for collection and
deposit, without instruction except by direction on margin of each
draft to "draw through Gate City National Bank, Atlanta, Ga."
The bills of lading were indorsed to "order" of the cashier of the
Columbia bank. The drafts, with bills of lading attached, were
transmitted at once by the Columbia bank to the Atlanta bank for
collection, each draft being indorsed: "Account of Second National
Bank, Columbia, Tenn." The bills of lading were sent without in-
dorsement of the cashier of the Columbia bank, and without any
instructions as to their surrender. However, they were surrendered
to the carrier by the Atlanta bank as soon as the drafts had been
presented to and accepted by said company. The drawee company
became insolvent, and the drafts were not paid. C. & B. seek to
hold the Columbia bank for their loss.

*Held:* The Columbia bank is not liable to C. & B. upon these facts.
)

2. SAME.    *Surrender of bill of lading.    Sight-draft.    Time-draft.*

Bank receiving a sight-draft for collection should not surrender an ac-  ·
companying bill of lading until the draft has been paid; but in the
case of a time-draft the bank may deliver up the accompanying bill
of lading to the drawee upon his acceptance of the draft, in the
absence of instructions or circumstances indicating that the bill was
to be held to secure both acceptance and payment of draft.

Case cited and approved: National Bank v. Merchants' Bank, 91
U. S., 92.

39—5 P

---

Bank *v.* Cummings.

---

3. SAME. *Same.* *When bill of lading accompanying time-draft must be held to secure payment.*

Bill of lading accompanying a time-draft must be retained by a collecting bank after acceptance of the draft, to secure its payment, when the bill of lading is made deliverable to consignor or his order.

Case cited and approved: 91 U. S., 631.

4. SAME. *Bank effecting collections through another bank.* *General rule.*

By the great weight of authority a bank receiving a draft for collection, payable at a distant point, has implied authority to send it for collection to a suitable agent at the place of payment, and such agent, when so selected, becomes the agent of the owner of the draft, and is not the agent of the transmitting bank.

Case cited and approved: Bank *v.* Bank, 8 Bax., 101.

5. SAME. *Same.* *Negligence of agent.*

And for negligence of such agent, resulting in loss to the owner of the draft, the transmitting bank is not responsible.

6. SAME. *Liability of collecting bank accepting drawee's check in payment.*

Where a bank, receiving paper for collection, accepts in payment the check of the party bound to pay it, and surrenders the paper, whereby injury results to the owners of the paper, the bank is responsible for the loss. But this principle has no application to the facts of this case which are set out in opinion.

---

FROM LINCOLN.

---

Appeal from Chancery Court of Lincoln County. W. S. BEARDEN, Ch.

LAMB & TILLMAN and PADGETT & FIGURES for Bank.

J. H. HOLMAN & CARTER for Cummings.

LURTON, J. The questions for decision arise upon the cross-bill of Cummings & Bledsoe against the complainant in the original bill. The firm of Cummings & Bledsoe were dealers in grain and produce at Petersburg, Tenn., and did their banking with the Second National Bank of Columbia, Tenn.

Between July 26, 1887, and August 4, 1887, they shipped by rail five car-loads of wheat to Atlanta, Ga., being part of a larger quantity contracted to be sold to the "Tollison Commission Company," of that city. Five separate bills of lading were taken, one for each separate car, "to the order of Cummings & Bledsoe or assigns," with directions thereon to "notify Tollison Commission Company." Against each shipment a draft was drawn by the consignors upon the Tollison Commission Company, and payable to Cummings & Bledsoe, or order. These five drafts, with the bills of lading pinned thereto, were left with the Columbia bank, entered upon a deposit ticket as if for deposit as a cash item. The drafts were stamped with the indorsement: "For deposit only to credit of Cummings & Bledsoe." The bills of lading were indorsed: "Pay to order of Geo. Childress." No special instructions accompanied these drafts when left in the Columbia bank, other than a direction on the margin of each draft in these words: "By request of parties, draw through Gate City National Bank, Atlanta, Ga."

These drafts were not discounted by the bank,

nor was credit given for them upon the deposit
account of Cummings & Bledsoe. They were en-
tered as having been received for collection, and
at once transmitted according to the written in-
structions on them to the Gate City National
Bank, Atlanta, for collection, each draft being
stamped with the indorsement: "Account of Second
National Bank, Columbia, Tenn." Geo. Childress,
to whom the bills of lading had been indorsed by
Cummings & Bledsoe, was the cashier of the
transmitting bank. Without any indorsement by
Childress these bills of lading were transmitted
pinned to the drafts, and no direction was given
as to whether the bills were to be surrendered
upon acceptance by the drawees of the drafts, or
held as a security for the payment of the drafts.
The drafts were all time-drafts being payable three
days after sight. The drafts were, upon receipt by
the Atlanta bank, presented to the Tollison Com-
mission Company for acceptance, and upon accept-
ance the unindorsed bills of lading were surrendered
to the acceptors. The wheat was delivered by the
carrier to the Tollison company. None of the
drafts were paid at maturity, and, after protest,
were returned to the Columbia bank as worthless,
the wheat having been disposed of and the drawee
being insolvent.

Cummings & Bledsoe, by their cross-bill, seek
to hold the bank at Columbia responsible for the
amount of these five drafts. The first ground
upon which liability is sought to be fixed is based

upon the charge that these drafts were deposited
as cash items, and credited to their account as
such, and thereby became the property of the
bank; that the drafts were well secured by bills
of lading indorsed to order of its cashier, and the
security having been surrendered by negligence of
its agent, acquits them of all responsibility as in-
dorsers of the drafts. The facts do not support
this contention. The drafts were not discounted
by the bank, and were not entered to the credit
of the drawers. There is evidence that some
years before this transaction the cashier of this
bank, in order to secure their business, agreed to
receive and collect checks and sight-drafts without
charge, and credit them as cash. This agreement
did not extend to time-paper, such as this was,
and there is no proof that such paper was ever
credited except as collected. Certainly these drafts
were only received for collection, and so entered
on the books of the bank.

It is next contended that the transmitting bank
was instructed to hold the bills of lading until
payment of drafts attached, and that the failure to
give similar instructions when transmitted is such
negligence as makes it responsible. It is not pre-
tended that any such instructions were given con-
cerning these particular drafts *at the time* they
were left for collection. The contention of com-
plainants in the cross-bill is that *theretofore* they
had given such directions concerning all their
drafts with bills of lading attached. The weight

of proof does not support this insistence. The conversations testified to by Mr. Cummings do not, as stated by himself, necessarily imply any such instruction. The bank's officers most positively deny any such directions, either orally or by letter. The burden of proof is upon Cummings & Bledsoe, and we agree with the Chancellor in holding that they have not satisfactorily shown any such general instruction. This brings us to the question as to whether, in the absence of instructions, the bank at Atlanta was authorized to surrender the bills of lading upon acceptance of the drafts, or whether the facts of the transaction, as indicated by the indorsements on drafts and bills, indicated the intent of the consignors to hold the bills as a security for the payment of the drafts.

It is well settled that when a sight-draft is attached to a bill of lading for the merchandise against which the draft is drawn, that the bill of lading is not to be delivered until payment. It is, however, equally as well settled that if the bill of lading be attached to a time-draft, the transaction imports a sale upon credit, and that the bill of lading is only retained to secure acceptance of the draft, and is to be delivered upon acceptance, unless there be instructions to hold until payment or circumstances indicating that the bill is to be held to secure both acceptance and payment. *National Bank* v. *Merchants' Bank*, 91 U. S., 92; 2 Daniel on Negotiable Instruments, Secs. 1734*a* and 1734*b*.

But it insisted that the fact that the bills of lading were taken to the order of the consignors, and indorsed by them to the cashier of the bank through which they were to be transmitted for collection, rebuts any implication arising from the fact that they were time-drafts, and therefore sales on a credit, and conclusively shows an intent to hold the title as security for payment of the drafts drawn against the shipment.

Mr. Benjamin, after a thorough consideration of the question in the light of the English decisions, concludes that "the fact of making the bill of lading deliverable to the order of the vendor is, when not rebutted by evidence to the contrary, almost decisive to show his intention to reserve the *jus disponendi,* and to prevent the property from passing to the vendee." Benjamin on Sales (Corbin Ed.), Sec. 565.

The same question was before the Supreme Court of the United States in a case where the bills of lading had been taken to the order of the cashier of the bank discounting the drafts drawn against the shipment, and Mr. Justice Strong, in delivering the opinion of the Court, said: "These bills of lading, unexplained, are almost conclusive evidence of an intention to reserve to the shipper the *jus disponendi,* and prevent the property in the wheat from passing to the drawees of the drafts." *Dawes et al.* v. *National Exchange Bank,* 91 U. S., 631.

In the case of *Security Bank* v. *Luttgin,* decided

by the Supreme Court of Minnesota, the defendant, Luttgin, shipped flour to Baltimore to fill an order, taking bills of lading to their own order. Draft at thirty days after sight was drawn against the shipment. This draft was discounted by the plaintiff, and the bill of lading indorsed in blank and delivered with the draft to the bank. The draft and bill of lading attached were sent by the bank to its correspondent for acceptance. Upon acceptance the bill of lading was surrendered to the drawees, who, becoming insolvent, failed to pay the drafts. The discounting bank thereupon sought to hold the drawer liable to it upon his indorsement. There was proof of an agreement that the bills of lading should not be delivered to the drawees until payment, but the Court said that "the transaction itself, independent of the parol agreement, considered as a matter for merely legal interpretation, did not express or import a sale upon credit, or determine that the drawees were entitled to the bills of lading upon acceptance. The taking of bills of lading making the goods deliverable to the order of the shipper rather than to the person for whom they are ultimately intended, has been considered almost conclusive proof of an intention on the part of the consignor to retain the *jus disponendi*, although subject to be rebutted." 29 Minn., 366.

Upon these authorities we conclude that the bank at Atlanta had no authority to surrender these bills of lading upon acceptance. Though it

had no instructions, yet the transaction on its face, as a mere matter of legal construction, bore an implication that the intent of the consignor was to retain the *jus disponendi* as a security for the payment of the drafts. Unless, however, the wheat could not be traced after delivery by the carrier, it was recoverable by the consignors.

A special agent, authorized to deliver a bill of lading only upon payment of the bill of exchange drawn against the goods and attached to the bill of lading, cannot bind his principal by a delivery without such payment. The person thus acquiring a bill indorsed in blank has been held not to acquire any title to the goods as against the principal. *Stollenwerck* v. *Thatcher*, 115 Mass., 224.

And third persons dealing with property thus shipped, though acting in good faith, in the regular course of business, and paying value, are chargeable with constructive notice, and acquire no better title than the drawee. *Bank* v. *Logan*, 74 N. Y., 568; *Heiskell* v. *Bank*, 89 Penn. St., 155; *Dawes* v. *Bank*, 91 U. S., 631.

It is also questionable whether a delivery by the carrier upon a bill of lading to the order of the consignor, and indorsed to order of the cashier of the transmitting bank, was a good delivery, the cashier never having indorsed the bills to Tollison & Co., or any one else. A carrier must deliver alone to the person named as consignee in the bill of lading, or to his order. This was not done. The Thames, 14 Wal., 98.

That the assignment of the bill of lading to the cashier of the Columbia bank placed the title of the wheat in him, is clear. This, however, would not have prevented suit for the wheat, or an action against the carrier. Childress, in whom was the title, was but the agent of the vendors, and, besides, the bank offered to take any legal step deemed advisable by the vendors. None was taken, either to recover the wheat or its value, or to hold the carrier liable, although one of the vendors went to Atlanta and consulted counsel. The question remains, Is the bank at Columbia responsible .for the negligence of the bank at Atlanta in surrendering these bills of lading upon acceptance, and enabling the drawees to obtain and make way with the security? By the great weight of authority the bank receiving a bill for collection, payable at a distant point, is impliedly instructed to send such bill to a suitable agent for collection at the place. of payment; and such agent, when so selected, becomes the agent of the owner of the bill, and is not the agent of the transmitting bank. *Bank of Louisville* v. *Bank of Knoxville,* 8 Bax., 101.

If the debt be lost by the negligence of the agent so selected, the right of action is in the owner of the paper, and not in the bank forwarding the paper. *Idem.* The liability of the transmitting bank is only for its own negligence. There can be no question of negligence in the transmission of this paper to the Gate City National

Bank, for this bank was designated by the drawers themselves. Having received no special instructions as to holding the bills of lading as security for payment of the drafts, they are not liable for neglect. If the transaction on its face imported an intent that the title of the wheat should be retained until payment of the drafts, and that this retention of the *jus disponendi* implied the impropriety of delivering the bills of lading, then the agent selected at Atlanta was as fully advised as to the legal construction inferable from the bills of lading as was the bank at Columbia. The duty of special instructions rested as strongly upon Cummings & Bledsoe as it did upon the agent for transmission. If the Columbia bank should have explained the legal inferences deducible from the state of the title to the bank at Atlanta, then the drawers should have given such explanation to the transmitting bank in the first instance.

One other question remains. The day after two of these drafts had been returned to the bank at Columbia unpaid, a check drawn by Tollison Commission Company against the Gate City National Bank was received by the bank at Columbia in a letter written by the Tollison Commisson Company's president, explaining that the drafts had been returned through mistake, and authorizing the Columbia bank to fill up the blank in check for amount of the returned drafts. This was done, and the drafts stamped as paid, and transmitted to the Gate City bank with the check of the

Tollison company, with directions to deliver the drafts to the Tollison company upon payment of its check. The check was dishonored, and it, with the drafts, returned to the bank at Columbia. When this check was received, it was regarded as good, and at once credited to the account of Cummings & Bledsoe, and notice given them. When it was dishonored, it was charged back to Cummings & Bledsoe. The contention is that this was without authority; that, having received the check in payment of the draft, the bank is bound to make the check good. The authority for this position is Morse on Banking, who says: "If the bank takes the check of the party who is bound to pay the paper, and thereupon surrenders the paper up to him, it assumes the responsibility for the check proving good." This is not applicable to the facts of this case. The drafts were never surrendered to the party bound to pay them. The ground of the proposition stated by Mr. Morse is that an agent for collection—as, a bank—can receive nothing but money in discharge of paper held for collection. If a check is taken, and injury results —as, by the discharge of a drawer or indorser—or the bank is unable to return the paper by reason of such unauthorized surrender, then the bank, having exceeded its authority, is liable for all consequences. Daniel on Negotiable Instruments (Corbin Ed.), Sec. 1624.

Here the drafts were sent with check, to be delivered only on payment of check, and were at

once returned upon dishonor of check.   No injury whatever resulted, and there can be no doubt that the course of business between the bank and Cummings & Bledsoe justified charging this check back to them, it having been by mistake passed to their credit.

Decree dismissing cross-bill affirmed with costs.