### 8147

#### CITY NATIONAL BANK v. COOPER & GRIFFIN.

1. COLLECTING AGENTS.—A BANK accepting a draft or bill of exchange for collection is liable for the neglect of duty occurring in its collection, whether arising from the default of its own officers or from that of its correspondent, or an agent employed by such correspondent, in the absence of any express or implied contract varying such liability.

2. IBID.—IBID.—Where a customer delivers to a bank a draft for collection and suggests to it the name of a suitable collection agent, and the bank acting on the suggestion employs such agent to collect, the owner of the draft must bear the loss arising from the negligence or default of collecting agent.

3. IBID.—IBID.—NEW TRIAL.—Under the evidence here it could not be held as matter of law that new trial should have been granted on the ground that the jury disregarded the instruction of the Court that the defendant was absolved from liability when the bank accepted a check instead of money from the collecting bank, unless defendant had authorized or sanctioned it, and that defendant was absolved from liability if plaintiff bank was guilty of negligence in enforcing payment from the collecting bank after collection by it.

Before WILSON, J., Greenville, April term, 1910. Affirmed.

Action by City National Bank against Cooper & Griffin. Defendants appeal.

*Messrs. Cothran, Dean & Cothran,* for appellants, cite: *New trial should have been granted for disregard by jury of instructions:* 8 Ohio 465; 7 L. R. A. 363, 559; 112 U. S.

276; 13 L. R. A. 241; 7 N. Y. 459; 11 N. Y. 203; 8 Am. R. 97; 30 N. W. 199; 12 Pac. 597; 36 Am. R. 505; 34 Am. Dec. 289; 36 Am. R. 264; 3 Ency. 810, 802, 804; 74 Am. St. R. 527; 75 N. W. 353; 1 Ency. 1027; 16 S. C. 1; 19 S. C. 491; 4 S. C. 550; 31 S. C. 138; 45 S. C. 519; 68 S. C. 523. *Plaintiff is liable for selection of agents, whether suggested by defendant or not:* 3 Ency. 810; 1 Ency. 1138.

*Messrs. Haynsworth & Haynsworth,* contra, cite: *Plaintiff is not liable for any default in collecting bank:* 34 A. D. 59; 62 A. S. R. 868; 41 A. R. 110; 30 A. D. 714; 4 Rawle 384; 6 Conn. 528; 34 A. D. 315; 38 A. S. R. 776; 55 A. R. 691; 41 A. R. 72; 24 A. S. R. 618; 33 A. S. R. 644; 17 A. R. 663; 47 L. R. A. 270; 6 H. & G. 146; 12 Wis. 629; 52 L. R. A. 632; 49 A. S. R. 158; 31 S. W. 38; 55 L. R. A. 274; 98 A. S. R. 440; 48 S. E. 601; 77 N. E. 563; 55 S. E. 95; 112 U. S. 272; 1 Pet. 25; 64 N. E. 800; 30 N. E. 199. *If draft not paid, bank may charge back to customer:* 111 S. W. 255; 32 S. W. 397; 19 A. T. 55; 31 S. W. 38. *To hold the plaintiff liable for negligence, actual loss or damage must be shown to have accrued therefrom:* 1 L. R. A. (N. S.) 246; 93 N. W. 983; 71 N. E. 312; 107 N. W. 968; 31 S. W. 38.

March 25, 1912. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendants appeal from a judgment in favor of the plaintiff founded on a verdict for $2,866.10. On July 3, 1907, the defendants, Cooper & Griffin, deposited with the plaintiff, City National Bank of Greenville, their draft on Steele, Miller & Company, of Corinth, Mississippi, for $2,476.23. The plaintiff bank immediately forwarded the draft with the usual collection endorsement to the Tishomingo Savings Institution for collection, and on July 11, 1907, Steele, Miller & Company paid the

draft to that bank. On July 20, 1907, the Tishomingo Bank sent the City National Bank its check for $2,476.23 on the National Bank of Commerce of St. Louis. Upon receiving the check, the City National Bank, on July 22, 1907, entered the amount of the check to the credit of Cooper & Griffin, and forwarded it for collection to its correspondent, the National State Bank of Richmond, Virginia; and that bank, in turn, sent it to the Mechanics National Bank of St. Louis for collection. Upon presentation of the check to the National Bank of Commerce, the drawee bank, on July 25, 1907, payment was refused for lack of funds. Notice of protest having been sent to the City National Bank, it extended the notice to Cooper & Griffin. When this notice was received, Mr. Steele, of Steele, Miller & Company, happened to be in Greenville, and at the request of Cooper & Griffin, and with the assent of the City National Bank, he made inquiry over the telephone of the Tishomingo Bank as to the dishonor of the check, and was assured that there was some mistake, and upon a second presentation it would be paid by the National Bank of Commerce. Cooper & Griffin made known this statement to the City National Bank, and it telegraphed to its Richmond correspondent to return the check to St. Louis for a second presentation. It appears, however, that the check was lost, and so was never again presented. The president of the Tishomingo Bank having failed in his promise to send a duplicate check, the City National Bank on October 11, 1907, made a draft on that bank for the amount. Payment of this draft was refused. About November 1, 1907, by agreement between the City National Bank and Cooper & Griffin, Mr. S. A. Cothran, an employee of Cooper & Griffin, was sent to Corinth with instructions to try to get the Tishomingo Bank to pay its draft. He received from the Tishomingo Bank about thirty-eight dollars in cash and a duplicate of the check which had been sent by it to the City National Bank on July 20, 1907. Payment of this check was refused, and

the paper was returned to the City National Bank. In December, 1907, the Tishomingo Bank suspended payment and went into bankruptcy. The City National Bank having made an unsuccessful effort to collect from the assets of the bankrupt $2,476.23 and interest, less the payment of thirty-eight dollars, brought this action to recover the amount from Cooper & Griffin.

The foregoing is a statement of the material undisputed facts. At other points in the evidence there were distinct issues of fact. Johnson, the cashier of the plaintiff bank, testified that the draft of Cooper & Griffin on Steele, Miller & Company was sent to the Tishomingo Bank for collection at the express request of Lively, the agent of the defendants, by whom it was deposited. Lively testified on this point as to the interview with Johnson: "When I took it in, he asked me how he should send it, and I told him that it didn't make any difference, it was drawn with exchange, and he asked me if I knew the name of a bank that he could direct it to, and I gave him the name of this bank at Corinth, and mentioned to him that Steele, Miller & Company did business with them, and told him that I remembered the name of this bank."

The evidence on the part of the defendants was that they participated in sending Mr. Cothran to Corinth, and in other efforts looking to collection from the Tishomingo Bank, merely aiding gratuitously the City National Bank, that Mr. Cothran was not their agent, but the agent of the City National Bank, and that they assumed no authority in the matter, considering their liability on the paper at an end when the draft was paid by Steele, Miller & Company. The undisputed testimony tended to show that there had been delay in pressing the claim against the Tishomingo Bank, and for this alleged negligence the defendants contended the plaintiff was solely responsible, and that by it they had been relieved even if before they had been liable. On this point the plaintiff's testimony tended to show that its officers acted

in concert with the defendants in sending Mr. Cothran, and in taking other means to collect the draft from the Tishomingo Bank. The plaintiff contended that there had been no negligence, but reasonable and concerted effort to collect on the part of the plaintiff and the defendants.

The first position taken in argument by defendants' counsel is that, although the Circuit Judge charged all but one of his requests and refused all but two of the requests of the plaintiff's counsel, yet the instruction was given to the jury that they might find for the plaintiff without respect to whether the plaintiff had failed to use due diligence in trying to collect from the Tishomingo Bank. The argument of defendant's counsel on the point is impressive, but a statement of the law and an analysis of the charge, we think, will show it to be unsound. At defendant's request the Circuit Judge charged the jury: "Where a bank, as a collection agent, receives a draft from one of its customers for collection, its position is that of an independent contractor, and the instruments employed by such bank in the business contemplated are its agents, and not the subagents of the owner of the draft. A bank which receives a draft for collection and sends it to a correspondent in another city to present for payment, collect, and remit the proceeds, is not justifiable in receiving from such other bank the proceeds of collection in the form of a check drawn by such other bank on another bank. If the collecting bank has received money for the draft, it should remit money, and the original bank in accepting anything else assumes responsibility for such other medium; unless the owner of the draft has authorized or ratified such departure from the requirements of the case." As there was no exception to the charge on this point it must be regarded the law of the case whether correct or not. But inasmuch as this point, vital in the trial of the case, is very important and has never been decided in this State, we shall not pass over it.

The rule which is supported by much judicial authority and strong reasoning in this country, as will be seen by reference to the cases cited below, is that when a bank receives paper for collection at a distant point, it engages to use reasonable efforts to collect and to pay its customer. The necessity of using other agencies being manifest, the bank is responsible only for reasonable care in the selection of such agencies, and if such care is exercised it will not be held liable for default on the part of the collecting bank. *Faden* v. *Merchants Bank,* 23 Pickering 330, 34 Am. Dec. 59; *Lord* v. *Hingham Nat. Bank,* 186 Mass. 161, 71 N. E. 312; *Guelich* v. *Nat. State Bank,* 56 Iowa 434, 41 Am. Rep. 110; *Bank* v. *Cummings,* 89 Tenn. 609, 24 Am. St. Rep. 618; *First Nat. Bank* v. *Sprague,* 34 Neb. 318, 33 Am. St. Rep. 644; *Daly* v. *Butchers and Drovers Bank,* 17 Am. Rep. 663, 56 Mo. 94; *Wilson* v. *Carlinville Nat. Bank,* 187 Ill. 222, 52 L. R. A. 632; *Farmers Bank and Trust Co.* v. *Newland,* 97 Ky. 464, 31 S. W. 38; *Irvin* v. *Pulley Co.,* 20 Ind. 157, 48 N. E. 601; *Bank of Rocky Mount* v. *Floyd,* 142 N. C. 187, 55 S. E. 95; *San Francisco Nat. Bank* v. *American Nat. Bank,* 5 Cal. App. 408, 90 Pac. 558; *Tiernan* v. *Commercial Bank,* 7 Howard (Miss.) 648, 40 Am. Dec. 83, note, 38 Am. St. Rep. 777, note, 77 Am. St. Rep. 625.

On the other hand, in 1884, the Supreme Court of the United States adopted the English rule, that a bank receiving a draft or bill of exchange for collection, is liable for neglect of duty occurring in its collection, whether arising from the default of its own officers, or from that of its correspondent, or an agent employed by such correspondent, in the absence of any express or implied contract varying such liability. *Exchange Nat. Bank* v. *Third Nat. Bank,* 112 U. S. 276, 28 L. Ed. 722.

The following cases show that this doctrine has grown in favor with the progress of modern commercial life: *Morton* v. *Hibernia Bank,* 127 La. 301, 53 Sou. 572; *Brown* v. *Peoples Bank,* 59 Fla. 547, 52 Sou. 718; *Simpson* v. *Waldby,*

63 Mich. 439, 30 N. W. 199; *Siner* v. *Stearne,* 155 Pa. 62, 25 Alt. 826; *Power* v. *First National Bank,* 6 Mont. 251, 12 Pac. 597; *Bailie* v. *Augusta Bank,* 95 Ga. 277, 51 Am. St. Rep. 74; *National Revere Bank* v. *Nat. Bank of Republic,* 172 N. Y. 102, 64 N. E. 799; *Second Nat. Bank* v. *Bank of Alma* (Ark.) 138 S. W. 472; *Streissguth* v. *Nat. German-American Bank,* 13 Minn. 50, 19 Am. St. Rep. 213, 44 N. W. 797.

We adopt this rule as the just one, because it is in accord with the common understanding of bank and customer in their dealings. In depositing his paper the customer ordinarily surrenders all control of it, and has nothing to do with the means taken by the bank to collect. On the other hand, the bank undertakes the collection for its own profit, takes its own methods, and selects its own agents. It seems, therefore, illogical to regard the collecting bank or any of the intermediate banks as agents of the depositor, or to put upon him loss due to their default. But, even if this were not so, it is more important that the law affecting commercial transactions of the entire country should be uniform and certain than that it should be logical; and for that reason, on questions like this it is better to follow the rule laid down by the Supreme Court of the United States.

The reason for applying this rule is strengthened when, as in this case, the bank gives credit to the depositor for the paper sent in payment of his draft by the collecting bank. *Kirkham* v. *Bank of America,* 165 N. Y. 132, 58 N. E. 753, 80 Am. St. Rep. 714. And if this were all it would be fatal to this action, and the verdict for the plaintiffs would have been contrary to the law as correctly laid down by the presiding Judge. But there was evidence that the defendants expressly directed, or at least influenced, the plaintiff bank to send their draft to the Tishomingo Bank. Indeed, the defendant's representative who made the deposit admitted that, in answer to an inquiry of the cashier as to how the draft should be collected, he gave the name of

the Tishomingo Bank, thus indicating that bank as a proper agent for collection and influencing the cashier to use it. This we think placed the case without the rule above set out. When the depositor takes part in selecting the agent to be used in collection of his paper, and thus acts in conjunction with the bank, or influences it in the transaction of the business, it does not lie in his mouth to say that the bank selected to make the collection at his instance or by his conscious influence was not his agent. *Exchange Nat. Bank* v. *Third Nat. Bank, supra; First Nat. Bank* v. *Quinby,* 131 S. W. (Texas) 429.

Having in view the evidence of an indication or request by the defendants that the plaintiff should send the draft to the Tishomingo Bank, the Circuit Judge instructed the jury as to the effect of such request or indication in accordance with the principles we have stated in these words: "If Cooper & Griffin turned over to the City National Bank of Greenville, a draft on Steele, Miller & Company, payable at Corinth, Miss., they must be presumed to have contemplated that this draft would be collected by presentation at Corinth, and if Cooper & Griffin indicated the Tishomingo Savings Institution as the bank to which they desired that the draft should be transmitted for collection, *and requested or directed it,* and if in pursuance of such indication, *request or direction* the City National Bank did send the draft to the Tishomingo Savings Institution for collection, then the City National Bank discharged its duty and Cooper & Griffin cannot hold it liable for any default or failure of the Tishomingo Savings Institution, and if that bank (the Tishomingo Savings Institution) collected the money and failed to pay it over, the loss would fall on Cooper & Griffin." This instruction was given at the request of the plaintiff, except that the italicized words were inserted by the Circuit Judge. It is true that the instruction was not given in this connection; that even under the facts stated in this charge the loss would not fall on the defendants if it was due to the negligence of

the plaintiff bank; but the omission was very clearly supplied by the following, which was the last instruction to the jury: "If the plaintiff was guilty of negligence in enforcing the collection of the checks taken by it from the Tishomingo Bank in payment of the collection of the defendants' draft, or of enforcing claim against same, and such negligence caused a failure to collect such checks, or to accomplish a settlement of the matter, the plaintiff must bear the loss."

The next position to be noticed is that taken by defendant's counsel that a new trial should have been ordered on the ground that if the charge had been regarded by the jury the verdict must have been for the defendants. As we understand, this position rests upon these instructions: first, that the defendants were absolved from liability after their check had been paid to the Tishomingo Bank, unless they had authorized or sanctioned the action of the plaintiff bank in taking the check of the Tishomingo Bank instead of money; and, second, that the defendants would be absolved from liability if the plaintiff bank was guilty of negligence in enforcing the payment of the debt due by the Tishomingo Bank for the money it had collected.

We do not think the conclusion was inevitable that the verdict should have been for the defendants under the instruction first mentioned; for the record does not warrant the inference that there was no evidence of ratification by the defendants of the plaintiff's acceptance of the check of the collecting bank. When informed that a check had been sent instead of money the defendants made no objection, and there was evidence that, when they received notice of the dishonor of the check, they not only failed to repudiate the course the bank had taken, but actively participated in some of the steps looking to collection afterwards taken.

The same evidence taken in connection with other testimony made an issue of fact as to whether the loss was attributable to the negligence of the City National Bank. The cashier of that bank testified as to communication to the

defendants: "We told them that it was their item, that it belonged to them, and that we were simply acting as their agent, and that we would be glad to do anything to collect it for them, but we would have to look to them for full payment." This evidence considered in connection with the evidence of the active response of the defendants to the notice of dishonor of the check, in suggesting plans for its collection, and of their subsequent active participation in sending Mr. Cothran to collect from the Tishomingo Bank must be regarded at least a *scintilla* of evidence that the defendants so entered into the plans for collecting from the Tishomingo Bank that whatever negligence there was might be imputed to the defendants as well as the plaintiff.

But, laying that to one side, another and stronger reason why the Court could not say that the jury disregarded the charge on the subject of negligence in finding for the plaintiff, is that the evidence leaves room for much doubt whether the loss was due to negligence at all. The sequel showed the Tishomingo Bank to be utterly insolvent, and it is by no means certain that the utmost diligence in pressing the claim against it would have brought payment. Indeed, the evidence furnished good ground for the jury to infer that harder pressure would have had no other effect than to precipitate bankruptcy. Our conclusion is, that under the evidence and the charge of the Circuit Judge, in which the law was correctly applied, the verdict depended on difficult issues of fact which the jury might have decided either way.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

*Messrs.* CHIEF JUSTICE GARY *and* JUSTICE HYDRICK *alone participate in this opinion and concur.*