13429

E. S. MACOMBER & CO., INC., v. COMMERCIAL BANK

(164 S. E., 596)

*Messrs. Haynsworth & Haynsworth,* for appellant,

*Messrs. Mauldin & Love,* for respondent,

June 14, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Plaintiff brought its action to recover from the defendant the sum of $5,215.48. It states in its complaint its claim of right to recover in this wise:

November 5, 1929, it was the owner of a check for the above-stated amount drawn in its favor by Smith Brothers of Easley, S. C., on Easley Loan & Trust Company, which it deposited, the same day, in People's National Bank for collection; that People's National Bank sent the check to the defendant, Commercial Bank, at Easley, for collection; that Commercial Bank, on November 6, presented the check to the drawee bank, Easley Loan & Trust Company; that it was duly paid, was surrendered, canceled, and charged to the account of Smith Brothers; that defendant has refused to remit the collection and People's National Bank has, for value, assigned to plaintiff such claim, or claims, as it has against the defendant because of its failure to so remit.

Plaintiff demands judgment for the amount of the check, with interest.

For answer defendant admits the corporate capacity of plaintiff, and that it received from People's National Bank, for collection, the mentioned check, but alleges that it received it under the laws of South Carolina, and the agreement existing between itself and the People's National Bank of Greenville, S. C., to the effect that: "This bank would not be liable except for its own negligence, and that it might send all items directly or indirectly to the drawee bank, and accept its draft or credits as conditional payments in lieu of cash, and might charge back any item not actually paid." It

further alleges that in pursuance of this agreement it presented the check to Easley Loan & Trust Company, the drawee bank, and received from it its check, covering this item, on the South Carolina National Bank of Greenville, S. C.; that this check was not paid, was protested, and the item charged back to the People's National Bank of Greenville. It admits that it has refused to pay the check sued on, and denies all the other allegations of the complaint.

The case was heard by Judge H. F. Rice and a jury. At the close of the testimony, each party made a motion for a direction of a verdict in its favor. That of the defendant was refused; that of plaintiff was granted. From the judgment entered on the verdict, this appeal comes.

There are eight exceptions, but appellant's counsel have condensed them in argument, as follows:

"I. The plaintiff in its original right as owner of the check has no cause of action against the defendant—

"(A) The check was deposited by plaintiff under a special agreement permitting the collecting bank to accept the check of a drawee bank—

"(B) There was no privity between plaintiff and defendant.

"II. The plaintiff as assignee of the People's National Bank, in which it deposited the check for collection, cannot recover in this action against the defendant, the collecting bank.

"(A) Check was handled under a special agreement between the People's National Bank and the Commercial Bank.

"(B) Under the terms of a special agreement between the People's National Bank and the defendant, the relation of principal and agent existed.

"(C) Prior to assignment by People's National Bank to plaintiff, that bank accepted charge-back of item in question.

"III. In any event the question of plaintiff's liability should have been left to the jury."

We shall consider them in this manner.

The plaintiff brings its action against the defendant without specifically stating in its complaint that it does so as assignee of the People's National Bank, but at the trial plaintiff's counsel stated that the suit was predicated on that assignment. The question has, however, been argued. Can plaintiff maintain the action of its own right? Unless it can show some direct relation between itself and this defendant, it cannot do so.

Plaintiff opened its account with the People's National Bank August 8, 1928, and at that time signed a card which bore on it this statement: "The undersigned accepts and agrees to the conditions on the back of this card."

On the back of the card was printed, among other things, these words: "This bank, or its correspondents, may send items directly, or indirectly, to any bank, including the payor, and accept its draft or credit as conditional payment in lieu of cash."

When plaintiff's agent and manager, Mr. Riordan, deposited the check of Smith Brothers, which is now in suit, in the People's National Bank of Greenville, he listed it on a deposit slip which contained substantially the same agreement as that quoted from the card above mentioned. He testified that he had not read the agreement on the card, signed by him, and on the deposit slips, but we do not think that of itself is sufficient to relieve plaintiff of the liability of the agreement which the signing carried with it. It is true that it has been held by our Courts that the mere signing of such provisions or agreements does not necessarily make them binding upon a depositor; the indication is that the matter must have been brought to the attention of the depositor in order to bind him. In this present case the evidence shows that Mr. Riordan, as the agent of the plaintiff who made the deposit in question and who signed the card when the first deposit was made, continued to make deposits in that bank about every day for a period of more than a

year; that these deposits were made on the regular deposit slips of the People's National Bank, every one of which contained the agreements and provisions above stated. There is no allegation, nor even a suggestion, that there was any deceit, concealment, or fraud about these transactions. It is evident that Mr. Riordan is a man of intelligence and education. The fact that he did not read the card cannot excuse him, and through him the principal for whom he acted. It is the established rule of law in this jurisdiction that a person who signs a written instrument must read it, or, if he cannot read, have it read to him, unless he be deceived by misrepresentation or concealment or fraud into signing. In the case of *Prince v. Insurance Company*, 77 S. C., 192, 57 S. E., 766, 768, this occurs: "But it is sought to be shown that plaintiff is not bound by the application because he took McKee's word for its contents and although he signed it, yet, it was with the understanding that it contained their previous oral contract. Even if this be true, it would seem unreasonable to hold the defendant responsible for the carelessness of the plaintiff in not reading or having read to him the contents of the paper he was signing. As was said in *Lee v. Insurance Company, supra* [Fed. Cas. No. 8190], where the same question arose: 'He is in fault because it is a piece of gross negligence on his part to sign a document of that kind without knowing its contents, and to accept a policy containing the specific provisions, referring back to the application, without considering the effect it would have upon his rights.' "

In the case of *Baldwin v. Cable Company*, 78 S. C., 422, 59 S. E., 67, 68, Mr. Justice Woods, for the Court, said: "The rule is a person who is unable to read is bound to have the paper read to him before signing, just as a person who can read is bound to read it before signing; and failure by such illiterate person to take this precaution will ordinarily be regarded such gross negligence as will estop him avoiding the contract."

Then the learned Judge goes on to explain that this rule does not bind one who is deceived by false representation and induced to sign the paper.

In the case of *J. B. Colt Co. v. Britt,* 129 S. C., 226, 123 S. E., 845, 847, this was said: "One cannot avoid a written contract into which he has entered on the ground that he did not attend to its terms, that he did not read the document which he signed, that he supposed it was different in its terms, or that it was a mere form. 13 C. J., 370, § 249. The latter rule obviously rests upon the basic premise that it is a duty owed by every contracting party to the other party and to the public to learn and know the contents of a written contract before he signs and delivers it."

There follows the citation of a number of cases in South Carolina, United States Courts, and other jurisdictions.

Respondent relies upon the case of *Stone v. Wachovia Bank,* 145 S. C., 166, 143 S. E., 27, 29, 61 A. L. R., 733, to support the position that, in as much as the printed matter was not called to the attention of its agent, it was not bound thereby. We do not think the case supports the contention. The printed matter there spoken of was upon the flyleaf of the passbook in which the deposit was entered. The Court said:

"There was evidence tending to show that no officer of the Coddington Company knew, until long after the transaction of the Stone item, that such printed matter was in their passbook, that it had never been called to their attention.

"It appears that the Charlotte Bank was accustomed to employ signature cards for depositors, which contained an agreement to the same effect as the printed matter in the passbooks, *but there was no evidence tending to show that such card had been signed by the Coddington Company in this particular instance."* (Italics added.)

In the present case it is undisputed that the plaintiff, by its agent and manager, *had signed the card.* The necessary

inference from the *Wachovia Bank case* is that, if the Coddington Company had signed the card at the Charlotte Bank, it would have been bound thereby. In the present case, again, it is also established that the plaintiff by its representative almost daily made deposits in the People's National Bank upon deposit slips which contained the same agreement printed upon the signature card, which deposit slips the agent himself prepared at plaintiff's office before they were taken to the bank.

In view of the undisputed facts of this case, it must be held that plaintiff is bound by the rule which we have quoted, and it is bound by the agreement which its agent made. ·

In the light of this conclusion, can it be held that there was such privity between plaintiff and defendant as will enable plaintiff to maintain this action?

It was for a while an issue in this State whether the Massachusetts rule or the New York rule governed.

The New York rule is that, when a bank receives paper for collection and forwards it to another bank, the latter becomes the agent of the forwarding bank and is not the agent of the depositor, or the owner of the check.

The Massachusetts rule is that when a bank receives paper for collection it merely obligates itself to exercise proper care and diligence in selecting its agents and sub-agents, and the bank to which it forwards the paper, the collecting bank, is not the agent of the forwarding bank, but is the agent of the depositor or owner of the paper.

In the case of *City Nat. Bank v. Cooper & Griffin*, 91 S. C., 91, 74 S. E., 366, 368, this was said: "On the other hand, in 1884 [*Exchange Nat. Bank v. Third Nat. Bank*, 112 U. S., 276, 5 S. Ct., 141, 28 L. Ed., 722] the Supreme Court of the United States adopted the English rule that a bank receiving a draft or bill of exchange for collection is liable for neglect of duty occurring in its collection, whether arising from the default of its own officers, or from that of its correspondents, or an agent employed by such corre-

spondent, in the absence of any expressed or implied contract varying such liability"—quoting many authorities.

From the same case: "We adopt this rule as the just one, because it is in accord with the common understanding of bank and customer in their dealings. In depositing his paper, the customer ordinarily surrenders all control of it and has nothing to do with the means taken to collect. On the other hand, the bank undertakes the collection for its own profit, takes its own methods, and selects its own agents. It seems, therefore, illogical to regard the collecting bank or any of the intermediate banks as agents of the depositor, or to put upon him loss due to their default."

In the case of *Harter v. Bank,* 92 S. C., 444, 75 S. E., 696, the rule announced in the case of *City Nat. Bank v. Cooper & Griffin* was adopted with approval.

It would seem, then, that the New York rule is the established law of this State, and it would seem to follow as a matter of course that there is no privity between plaintiff and defendant which enables plaintiff to maintain this action in its own right.

In the case of *First National Bank v. Federal Reserve Bank,* 6 F. (2d), 339, 343, heard by the Circuit Court of appeals for the Eighth Circuit, the Court said this: "The plaintiff indorsed and transmitted the checks to the defendant 'for collection,' and the defendant received and accepted them for collection. Where the owner of a bill of exchange indorses and delivers the same to a bank, not to collect, but as the agent of the owner to transmit for collection, the first bank, accepting the paper for collection, becomes the agent of. and liable to the owner"—citing a number of authorities from several jurisdictions.

That is the exact situation in our case. The People's National Bank of Greenville accepted the check in question to transmit for collection and thus became the agent of the plaintiff and is liable to him, if there be liability. Certainly

there was no privity between plaintiff and this defendant in this transaction.

In the case of *Douglas v. Federal Reserve Bank* (C. C. A.), 2 F. (2d), 818, 819, 44 A. L. R., 1425, affirmed by the United States Supreme Court and reported in 271 U. S., 489, 46 S. Ct., 554, 70 L. Ed., 1051, it appears that the plaintiff in that case had deposited a check for collection in the Wilcox Bank; this bank forwarded it to the Federal Reserve Bank, which in turn forwarded it direct to the drawee bank, and accepted the latter's check in payment, which check failed of payment because of the closing of the drawee bank. The plaintiff sued, not the initial bank, but the collecting bank (which corresponds in this case to the Commercial Bank, defendant here). The Court held that there was no privity between the plaintiff and the collecting bank under the New York rule. It said: "Under the New York rule the depositor of a dishonored check, the payment of which has failed through the fault of a transferee of the initial despositary, must proceed against the said initial bank, upon the theory that there is no privity between him and the subsequent holders, while in Massachusetts he may sue directly the bank through whose fault the loss occurred."

To the same effect is the holding of the United States Supreme Court in the case of *Federal Reserve Bank v. Malloy*, 264 U. S., 160, 44 S. Ct., 296, 68 L. Ed., 617, 31 A. L. R., 1261. It is true that the parties in that case were governed by a Florida statute which the United States Supreme Court held substituted the Massachusetts rule for the New York rule.

It seems unnecessary to cite further authorities to sustain the position that there is no privity between plaintiff and defendant which would sustain this action, if plaintiff sued in its own right.

Can plaintiff recover against defendant in its right as assignee of People's National Bank? It could take no higher right than its assignor.

Respondent herein relies upon the case of *Stone v. Wachovia Bank* as authority for its right to recover in this action. The plaintiff Stone did not bring his action against the Anderson Bank, which was the collecting bank, but against the Wachovia Bank, the transmitting bank, and brought his action as the assignee of Coddington, who, in turn, was the assignee of the Charlotte Bank, who had transmitted the item for collection to the Wachovia Bank. In the present case plaintiff is endeavoring to sue the collecting bank as assignee of its agent, the People's National Bank. There is no authority needed to be cited to sustain the proposition that plaintiff has only the right which the People's National Bank had against the defendant. The question then arises whether the special agreement between the People's National Bank and Commercial Bank to the effect that the Commercial Bank might accept the checks of the drawee bank with its corresponding right to charge back the item to the People's National Bank if it were not paid, was binding. The *Wachovia Bank case* contains this: "The general rule is that a forwarding bank, *in the absence of a special agreement,* is authorized to accept only legal tender from its collecting agency"—citing numerous authorities.

The italicized words which are in the opinion show that this rule may be abrogated by a special agreement.

The case of *First National Bank v. Federal Reserve Bank, supra,* is authority for the statement that an agreement similar to that between the People's National Bank and Commercial Bank is binding, and that Commercial Bank may limit its liability by such agreement—quoting *National Revere Bank v. National Bank of Republic,* 172 N. Y., 108, 64 N. E., 799.

The case of *Merchants' National Bank v. Bank of Ninety Six,* 135 S. C., 347, 133 S. E., 910, 912, recognizes the right of banks by these special agreements, to limit their liability. It is there said: "Another reason also that is fatal to plaintiff's case is the agreement between plaintiff and Federal

Reserve Bank set out in the case, which limited the liability of Federal Reserve Bank. When plaintiff entered into this agreement with Federal Reserve Bank, that act alone destroyed any ground of the relationship of principal and agent between defendant and Federal Reserve Bank, in the absence of any showing that defendant knew or acquiesced in this agreement."

In the case of *Ryan v. Columbia National Bank,* 142 S. C., 231, 140 S. E., 593, 594, a deposit was made by means of the bank's regular deposit slips upon which was printed an agreement similar in nature to that involved in this case. The opinion of the Court delivered by Mr. Justice Cothran, and concurred in by all the other Justices, expressly recognizes the validity of such agreement. The opinion quotes with approval from the case of *City Nat. Bank v. Cooper,* 91 S. C., 91, 74 S. E., 366, the following: "On the other hand, in 1884 [*Exchange Nat. Bank v. Third Nat. Bank,* 112 U. S., 276, 5 S. Ct., 141, 28 L. Ed., 722], the Supreme Court of the United States adopted the English rule, that a bank receiving a draft or bill of exchange for collection, is liable for neglect of duty occurring in its collection, whether arising from the default of its own officers, or from that of its correspondent * * * *in the absence of any expressed or implied contract varying such liability.*"

Continuing, we take from the *Ryan case:* "A necessary inference from this declaration of the law is that the Massachusetts rule, the antipode of the New York, Federal and South Carolina rule, may be incorporated into the contract of deposit by *expression or implication.*"

Quoting again from the *Ryan case:* "The stipulation not only incorporates the Massachusetts rule into the contract of deposit, but it authorizes the depository bank to accept the check of the collecting bank in remittance of the collection, when under ordinary conditions it is not authorized to accept anything but money"—citing *Federal Reserve Bank of Richmond v. Malloy,* 264 U. S., 160, 44 S. Ct., 296, 68

L. Ed., 617, 31 A. L. R., 1261. Continuing the quotation: "There can be no question as to the correctness of the principle that, if the parties have agreed to the stipulation altering the prevailing rule, they will be bound thereby"—citing other authorities in addition to the *Malloy case.*

In *First National Bank v. Federal Reserve Bank,* 6 F. (2d), 339, 343, cited by the Circuit Court of Appeals, Eighth Circuit, this is said: "The right of the initial bank to so limit its liability by contract is clearly recognized by those jurisdictions which follow the New York rule. They say the Massachusetts rule may be imported into the contract by statute or by agreement, expressed or implied"— citing authorities.

It is plain, then, that the agreement between the depositor, the plaintiff in this case, and the depository bank, the People's National Bank, provides that the depository bank "acts only as a depositor's collecting agent, and assumes no responsibility beyond the exercise of good care. All items are credited subject to final payment in cash or solvent credit. This bank will not be liable for default or negligence of its duly selected correspondents, nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. *This bank or its correspondent may send items directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment whether returned or not, also any item drawn on this bank not good at close of business on day deposited.*" (Italics added.)

To this agreement we have held plaintiff assented by the act of its agent and manager.

The depository bank selected as the collecting bank the Commercial Bank of Easley, defendant herein. The agreement between these two banks is identical with that just quoted.

Unquestionably, under this agreement the defendant had the right to accept the draft or check of Easley Loan & Trust Company drawn upon the South Carolina National Bank of Greenville and, unquestionably, when the check was not paid and which contained the item of $5,215.48, it had the right to charge the item back to the People's National Bank of Greenville. This it did and notified People's National Bank of its action. The People's National Bank acquiesced in this action, as it was bound to do under its agreement with Commercial Bank. It in turn, and before the assignment to plaintiff, charged the item back to plaintiff, as it had the right to do under its agreement with plaintiff, when it accepted the deposit for collection. It had the right to charge back as a matter of law. In the case of *Inter-State National Bank v. Ringo,* 72 Kan., 116, 83 P., 119, 123, 3 L. R. A. (N. S.), 1179, 115 Am. St. Rep., 176, it is stated: "In *Midland National Bank v. Brightwell,* 148 Mo., 358, 49 S. W., 994, 71 Am. St. Rep., 608, it is said: 'When a note or draft is sent by one individual or bank to another bank for collection and to remit the proceeds to the sender, the relation of principal and agent is created and not that of creditor and debtor.   *   *   *   Having received the note or draft for collection, it does not owe the amount thereof to the sender until collected, and though it may credit in its books therefor, such a credit may be treated as provisional if the paper is afterwards dishonored, and it may cancel the credit.' The fact that the depositor's account is credited with the amount of the items taken for collection does not of itself operate to transfer the title to the paper, for, by the custom of bankers, the collection is charged back at once if not paid"—citing 3 Am. & Eng. Enc. Law (2d Ed.), 817.

In the case of *Pinkney v. Kanawha Valley Bank,* a West Virginia case reported in 68 W. Va., 254, 69 S. E., 1012, 32 L. R. A. (N. S.), 987, Ann. Cas., 1912-B, 115, it is held, quoting syllabus: "If the holder of a check indorses it, and deposits it for credit and collection in another bank, the

collecting bank, if the check is not paid, and it is without fault in forwarding it for payment, has the right, on its return, to charge it back to its customer or recover the amount if he has in the meantime withdrawn the money."

In the case of *Southern Stove Works v. Converse Savings Bank*, 112 S. C., 230, 100 S. E., 75, Mr. Justice Watts delivered the opinion of the Court and said: "His Honor committed error when, he instructed the jury that * * * entry on the book of the bank of the item received from the collecting bank constituted payment of the item. This was error. * * · * It is the custom of banks to make such entry that does not constitute payment. Such entry stands when the item is actually paid or collected, the bank has the right to charge it off. When a check or draft is drawn and handed to the bank, the bank credits its customer with that amount. If the draft, check or item is not collected or paid, the bank has the right to deduct it from the customer's account. The entry by the bank is simply one of convenience to keep the customer's account straight."

What did this assignment by the People's National Bank convey to the plaintiff? Only such right or claim as it had against Commercial Bank. It is incontestible that Commercial Bank carried out in every particular its agreement with People's National Bank. The latter bank recognized this fact when it received notice from the Commercial Bank that it had charged back to People's National Bank plaintiff's item of $5,215.48. It accepted and acquiesced in this action of Commercial Bank, when it, in turn, charged the item back to plaintiff and required plaintiff to pay the money back to it, before the assignment to plaintiff. Its account with Commercial Bank on this item was closed. It had no cause of action against Commercial Bank, and hence could not, and has not, assigned to plaintiff any right of action against this defendant. If plaintiff has any right of action in these premises it is against People's National Bank, which question is not before us for determination at this time;

nevertheless, we are inclined to agree with the proverb of Heywood, uttered many, many years ago: "He hath the wrong sow by th' eare," in so far as this defendant is concerned.

In the view which we take of this case it is not necessary to consider the third question, namely, whether the issue of defendant's liability should have been left to the jury.

The judgment of the Court below is reversed, with instructions to enter judgment for defendant under Rule 27 of this Court.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter and Mr. W. C. Cothran, Acting Associate Justice, concur.