LAND, J.
The opinion and decree of the Court of Appeal in the above-entitled cause reads as follows, to wit:
“On January 27, 1906, Nott & Ward, residing at Cleveland, Miss., drew their check on the Bolivar County Bank, also situated at Cleveland, Miss., and sent it by mail to plaintiffs, who reside in the country a few miles from Areola, 111. Plaintiffs received the check on *304 January 30th, and on the next day sent it, for collection and credit, to the Areola State Bank at Areola, 111. This bank received it on February 1st, and on the same day mailed^ it to the American Trust & Savings Bank at Chicago, 111. Here it was received on February 2d, and forwarded at once to defendant. It reached defendant on February 5th, and on the same day was forwarded to the bank on which it was drawn. It reached the latter on the morning of February 7th. At that time Nott & Ward had to their credit, in said bank, funds more than sufficient to pay said check in full.
“On receipt thereof, the Bolivar County Bank laid it aside, and late in the night of the same day, February 7th, made an assignment for the benefit of its creditors. Early the next day a receiver was appointed, who, on taking possession, found the check still on hand and returned it to defendant, and it finally got back to plaintiffs through the same channels by which it came.
“Plaintiffs then sought to recover of Nott & Ward on the original obligation, in payment of which said check was given, but were unsuccessful in their attempt, and they now seek to hold defendant for their damages, which they aver to be the face value of said check, less a dividend of 25 per cent, paid on account thereof by the receiver. For a cause of action they rely on the alleged negligence of the defendant in sending said check to the bank on which the same was drawn, with the result above stated, although there was another bank in the same place through which said check might have been presented.
■ “The defenses set up are several: First, that there is no privity of contract between plaintiffs and defendant; second, that there was no negligence'on the part of defendant;, third, that defendant’s negligence, if any, was not the proximate cause of any damage which plaintiffs may have suffered; fourth, that plaintiffs suffered no damages through any negligence of the defendant; fifth, that the measure of damages is not, under the circumstances of this case, the full face value of the check; sixth, defendant’s plea is the prescription of one year.
“1. Whether or not there be, under the circumstances of this case, privity of contract between plaintiffs and defendant, is a question about which there is a wide divergence and hopeless conflict of authority. The question has arisen in England and in almost every state of the Union, and the authorities are equally eminent whether holding the affirmative or the negative.
“We consider the question an open one in this jurisdiction.
“In so far as it affects plaintiff’s 'right of action, we might dispose of it shortly. Defendant is, in fact and in law, plaintiff’s subagent. Where the principal has a remedy directly against the subagent, circuity of action is avoided as well as the possibility of justice miscarrying. Our Code gives such a right of action in terms. Civ. Code, art. 3009. The right also exists under the lex mercatoria in cases such as this. Story on Agency, § 217.
“But, in. view of the plea of prescription herein filed, it becomes necessary to inquire whether that right of action arises ex contractu or ex delicto. The test is whether the defendant’s alleged negligence was a violation of some general duty arising by law in favor of every one injured by the breach thereof, or the violation of a particular obligation voluntarily undertaken by defendant for account of plaintiffs, and of which plaintiffs alone can complain.
“The very fact that a question can arise as to plaintiff’s right of action here is proof that the duty in which defendant failed was not a general but a particular one. Otherwise the mere allegation of negligence and consequent damage would exclude any possible question as to plaintiff’s right to complain of the breach thereof.
“And whether we look upon the appointment of a subagent by the agent as bringing the latter into direct relations with the principal under the original contract of agency or a new and distinct contract between the agent and subagent, for the benefit of the principal, the result is the same; in either case there is privity of contract between the principal and sub-agent.
“Defendant’s obligation arose, therefore, ex contractu, and plaintiffs have a right of action directly against it, which is not barred by the prescription of one year.
“In this connection we have heretofore held otherwise.' Smith & Allen v. Canal-Louisiana Bank, 5 Ct. App. 227, is correctly decided on other grounds; but, in so far as it conflicts with the views hereinabove expressed, it is overruled.
“2. In the absence of a stipulation to that effect, 'or of some well-known and approved custom, it was negligence for the defendant to send the check to the bank on wjiich it was drawn; there being another bank at the same place. It was not a proper presentation of the check.
“3. It was not negligence for the bank at Areola to send the check to Chicago, and for the bank at that place to send it to New Orleans instead of direct to Cleveland. It is a reasonable custom for banks to send checks to their correspondent at that commercial center nearest the point at which the check is payable.
“The duty of exercising prudence in the selection of a collecting agent makes this necessary. But, had there been negligence in this, that negligence was not the proximate cause of a failure to present the check properly, but the proximate cause was defendant’s own negligence in sending the check to the bank on which it was drawn.
“4. If, by reason of defendant’s negligence, plaintiffs have lost all recourse against Nott & Ward, either on.the check itself or on the obligation in payment of which it was given, then plaintiffs have been damaged. In the suit brought by plaintiffs against Nott & Ward, it. was held that the latter had been so discharged; *306 tot. as defendant was no party to their proceedings, that question is subject to re-examination here.
“It was properly held that' Nott & Ward were so discharged. When plaintiff accepted their check and undertook to collect it in payment of the note held by them, it was their duty to present it promptly and properly. When so presented and paid, the note would have been discharged. If, by reason of any negligence on the part of plaintiffs, or their agents, in presenting the check, the amount of the check was lost to Nott & Ward, they had the right to set up the amount of their loss as a compensation or set-off against the amount of the note, as, in fact, they did.
“The situation, therefore, is that plaintiffs must be held to have taken the check in payment for the note, and if, by reason of defendant’s negligence, the amount thereof has been lost to plaintiffs, defendant is liable for the loss.
“Nor can there he any doubt that, when defendant received the check for collection, it represented its full force and value, and, properly presented, would have either been paid, or plaintiffs would have been left with their recourse against the drawers unimpaired. But, by reason of defendant’s negligence in failing to make proper presentation, the check was not paid, and the drawers have been discharged.
“For the ‘ability and willingness’ of Nott & Ward, as evidenced by the fact that the check was itself an order to pay, and they had funds on deposit ready to meet it, was ‘equivalent to a tender of payment’ under the terms of Negotiable Instruments Law (Act No. 64 of 1904) § 70. And we add that the fact that the deposit was not withdrawn was equivalent to a consignment. Hence Nott & Ward were discharged, and the amount of the deposit remained at the risk of plaintiffs, and was lost to them when the bank went into the receiver’s hands (Civ. Code, art. 2167), all through the failure of defendant to present the check in a proper manner.
“As to the amount of plaintiff’s damages, it is manifestly the face value of the check, and it is perfectly useless to go into any inquiry as to what cash or other assets the Bolivar County Bank had on February 7th, or at any other time, or whether the check might or might not have been paid. So far as the plaintiffs are concerned, the situation is this: Had the check been properly presented, it would either have been paid, or it would not. So that plaintiffs would either have had their money or their recourse against Nott & Ward for the full amount.
“As it is, no part of the check has been paid, and plaintiffs have lost their recourse against Nott & Ward.
“The judgment appealed from is therefore correct.
“As to the suggestion that defendant is- entitled to a subrogation to plaintiffs’ claim against the receiver, and that plaintiffs should deliver the check and.make an assignment thereof before execution should issue, it is not without merit; but it is too late to make the request in an appellate court, and rather irregular to urge the request in no other form than as a suggestion contained in a brief. We have no doubt that plaintiffs will surrender the check, unless already surrendered to the receiver, and execute an assignment if requested to do so; but, at any rate, the effect of the judgment in favor of plaintiff is to operate as a subrogation of defendant to all of plaintiffs’ rights against the Bolivar County Bank and its receiver. But we do not think that the judgment should be amended at this time.
“Judgment affirmed.
“Rehearing refused June 22, 1910.”
The primary question in the ease is: What was the relation existing between the defendant and the Ar'cola State Bank?
Mrs. Martin was a customer of the Areola State Bank, and the check, indorsed by Henry A. Martin, the payee, when received by that bank, was passed to her credit on deposit account.
The Areola State Bank indorsed the check in blank payable to the order of any bank, banker, bankers, or trust company, and forwarded the same to the American Trust & Savings Bank of Chicago, which gave the sending back credit.as if for cash received. The American Trust & Savings Bank indorsed the check in blank, in the same manner, and forwarded the same to the defendant 'bank “for credit.” The defendant bank gave the credit as instructed, and, having indorsed the check to the order of any bank or banker, forwarded the same for payment to the Bolivar County Bank on which the check was drawn. When the cashier of that institution received the check, his bank was insolvent and was about to close its doors, and the check passed into the possession of the receiver appointed to wind up the affairs of the bank. The receiver returned the check to the defendant, which charged back the credit given to the American Trust & Savings Bank and returned the check to that institution. In like manner, the credit given the Areola State Bank was • charged back by the American Trust & Savings Bank and *308 the check returned. The Areola State Bank then canceled the credit given to Mrs. Martin and delivered the cheek to her.
It appears that Mrs. Martin presented the check to the receiver as a claim against the Bolivar County Bank and has received a 25 per cent, dividend thereon, and that she also brought an unsuccessful suit in the state of Mississippi against the drawers of the check on the notes for which the check was given.
Prom the foregoing statement of facts, it appears that there was no privity of 'contract between the defendant bank and the Areola .State Bank. As a matter of fact, the two banks were strangers to each other.
Under the provisions of the Civil Code, substitution necessarily implies an appointment by the agent of another person to manage in his stead. Articles 3007, 3008. If such appointment be authorized, the substitute becomes the agent of the principal. If not authorized, the agent remains responsible, and “the principal may, if he thinks proper, act directly against the substitute.” Article 3009. As the Areola State Bank did not appoint the defendant as its substitute, article 3009 has no application.
A subagent employed by the agent is not a substitute in the sense of the Civil Code.
The case is, therefore, governed by the general principles of commercial law.
If the check had been forwarded by the Areola State Bank as collecting agent, that institution would have been liable to the plaintiff for any loss occasioned by the conduct of its subagent, between whom and the plaintiff no privity existed. Exchange Nat. Bank v. Third Nat, Bank, 112 U. S. 276, 5 Sup. Ct. 141, 28 L. Ed. 722. The principle thus announced is supported by the great weight of authority, and on questions of commercial law the decisions of the Supreme Court of the United States should be followed both for their authoritative weight, and for the sake of uniformity so desirable in the matter of negotiable instruments.
The rule just stated would apply if the Areola State Bank had indorsed the check specifically for collection; but, as a matter of fact, that bank indorsed the check in blank and forwarded the same for collection and credit on its own account, and its correspondent in Chicago gave the credit, and indorsed the check in blank and forwarded the same to the defendant “for credit.”
On the receipt of the check, the defendant gave its correspondent credit, and, having indorsed the check in blank, forwarded the same to the drawee bank for payment. As already stated, the Areola State Bank gave its customer credit for the check on deposit account. Hence on the face of the cheek, it appeared that the Areola 'State Bank had acquired the paper from the payee, and had transferred the same to the American Trust & Savings Bank, and that institution had indorsed the cheek in blank and forwarded the same for collection and credit to the defendant bank. Under this state of facts, it is clear that there was no contract of subagency, expressed or implied, between the defendant and the Areola State Bank, and that the defendant, in the absence of notice, had the right to assume that the title had- vested in the American Trust & Savings Bank. Continental Bank v. First National Bank, 84 Miss. 103, 36 South. 189, 2 Am. & Eng. Ann. Cas. 116. It is obvious that banks could not deal, without great risks, in cheeks and bills indorsed in blank, if they were bound to take notice of the understandings -between prior indorsers. The defendant has settled the transaction with the American Trust & Savings Bank, and owes no duty to the prior parties.
It is therefore ordered that the judgments of the Court of Appeal and of the district court rendered in this cause be annulled, avoided, and reversed, and it is now ordered that plaintiff’s demand be rejected and this suit be dismissed, with costs in all courts.