(113 So. 754)

No. 28326.

**SABINE CANAL CO. v. CROWLEY TRUST & SAVINGS BANK et al.**

May 23, 1927. Rehearing Denied July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. **Banks and banking** ⟨⟩169—Payees, whose bank sent drafts to another bank for collection, may sue insolvent collecting bank for proceeds, there being privity of contract.

There is privity of contract between payees of drafts and collecting bank to which payee's bank had forwarded drafts, where such collecting bank had received proceeds, so that payees may sue such bank after insolvency for particular money and exchange received.

2. **Banks and banking** ⟨⟩166(1)—Payees of drafts held not entitled to payment by preference from money found in insolvent collecting bank, where proceeds were not kept separate.

Where collecting bank receiving cash proceeds of draft mingled them with other cash on hand and paid out money in course of business before being closed, payees are not entitled to be paid by preference out of money found in bank since particular money could not be identified.

3. **Banks and banking** ⟨⟩166(1)—Payees of draft may recover exchange received by collecting bank in payment, in suit brought after collecting bank's insolvency.

Where collecting bank received exchange in payment of draft, payees may recover such exchange from state bank commissioner after closing of collecting bank.

4. **Banks and banking** ⟨⟩166(1)—Payees of drafts are entitled to payment in due course of liquidation of insolvent collecting bank.

Where collecting bank became insolvent after receiving proceeds of drafts, payees are entitled to be paid their claim in due course of liquidation of bank.

O'Niell, C. J., dissenting.

Appeal from Fifteenth Judicial District Court, Parish of Acadia; W. W. Bailey, Judge.

Suit by the Sabine Canal Company against the Crowley Trust & Savings Bank and others. Judgment for respondents, and plaintiff

164 LA.—2

appeals. Judgment set aside, and judgment for plaintiff entered.

Medlenka & Bruner, of Crowley, and E. R. Kaufman, of Lake Charles, for appellant.

Philip S. Pugh, of Crowley, for appellees.

THOMPSON, J. The plaintiff sues to be decreed the owner of $5,000 in money and an exchange on a New Orleans bank, drawn by the Bank of Acadia, payable to the defendant bank for $8,740.77, and which money and exchange were found in the defendant bank when it failed to open for business and was taken in charge for liquidation by the commissioner of state banks on the morning of January 23, 1926.

The claim of ownership is predicated upon the fact that the money and exchange referred to was the proceeds of certain items which had been sent to the defendant bank for collection and had been collected, but had not been remitted in accordance with the instructions contained in the letter of transmission.

It is alleged that the said money and exchange had not been mingled with the assets of the defendant bank up to the time it failed to open its doors for business and therefore was susceptible of specific and definite identification.

The state bank commissioner in charge of the liquidation of the defendant bank in answer admits the receipt of the items alleged in plaintiff's petition and avers that the Crowley Trust & Savings Bank received a sight draft or exchange for $13,740.77 from the Bank of Acadia, drawn on the Hibernia Bank & Trust Company. That, later, the Crowley Trust & Savings Bank surrendered to the Bank of Acadia the aforesaid exchange and received instead $5,000 in money and a New Orleans exchange for $8,740.77.

It is further alleged that in accordance with instructions received from the First National Bank of Lake Charles, from which

bank the plaintiff's drafts were received, the Crowley Trust & Savings Bank forwarded to the Marine Bank & Trust Company of New Orleans its exchange drawn on said bank for $12,231.26, which exchange was never protested but returned to respondent unpaid.

It is further averred that the funds received as the proceeds of the collections on plaintiff's drafts were mingled with the other assets of the Crowley Trust & Savings Bank and were therefore not capable of identification.

The trial in the lower court resulted in a judgment rejecting plaintiff's demand, and hence this appeal.

It appears from the evidence and admissions in the record that the plaintiff sold to the Simon Rice Mill, of Crowley, a certain lot of rough rice for which plaintiff received three sight drafts drawn to its order on the said Simon Rice Mill with bills of lading attached, the three drafts aggregating $7,671.42.

The plaintiff and one S. J. Welsh also sold to said Rice Mill another lot of rough rice for which they received two sight drafts on the said rice mill payable to their order and attached to bills of lading. These two drafts aggregated the sum of $4,560.03.

The three first mentioned drafts were deposited with the First National Bank of Lake Charles for collection and the last two drafts were deposited with the Lake Charles Trust & Savings Bank for collection, but by that bank were turned over to the First National Bank of Lake Charles.

On January 21, 1926, the five drafts, aggregating $12,231.26, were forwarded to the Crowley Trust & Savings Bank by the First National Bank of Lake Charles, indorsed in blank by said bank, with instructions to collect and to remit to the Marine Bank & Trust Company of New Orleans, to be by said bank placed to the credit of the Lake Charles bank.

The drafts were received by the Crowley Trust & Savings Bank on January 22d and on the same day were paid to said bank by the Bank of Acadia on behalf of the drawee, the Simon Rice Mill, to whom the bills of lading were released.

Along with the five drafts above referred to were presented other checks and drafts belonging to persons other than the plaintiff and Welsh, amounting to $1,509.51.

These last-mentioned drafts were included in the exchange which the Bank of Acadia issued to the Crowley Trust & Savings Bank for $13,740.77.

Later in the day, and before the bank closed for the day, the Crowley Trust & Savings Bank returned the exchange above mentioned to the Bank of Acadia and received in lieu thereof $5,000 in money and a New Orleans exchange for $8,740.77.

On the morning of January 23d after the commissioner of banks had taken over the Crowley Trust & Savings Bank, an exchange for $12,231.26, the exact amount of the plaintiff and Welsh collections, was mailed to the Marine bank with instructions to place the funds to the credit of the First National Bank of Lake Charles. It does not appear from the record whether this exchange on the Marine bank was made out by the cashier of the Crowley Trust & Savings Bank on the evening of January 22d before the bank closed, or was made out by the bank commissioner when he assumed control on the morning of the 23d. It is distinctly admitted, however, as previously stated, that the exchange was mailed by the bank commissioner. The exchange was not paid, but was returned to the commissioner, for the reason that the Crowley Trust & Savings Bank had no funds to its credit in said Marine bank, and for the further reason that the drawing bank was in the hands of the state banking department for liquidation.

The bank commissioner likewise forwarded to an undisclosed bank in New Orleans the

exchange for $8,740.77 for collection, but payment had been stopped by the Bank of Acadia at the request of the plaintiff and the First National Bank of Lake Charles.

It is admitted that when the bank commissioner took over the defendant bank there was on hand in the vault $11,078.76 in cash and the exchange for $8,740.77.

It is also conceded that the bank owed two New Orleans banks more than a half million dollars with practically all of its assets pledged as collateral for the debt of said two banks.

The defendant bank was unquestionably insolvent when it closed its doors.

[1] It is argued by counsel for defendant that there is no privity of contract between the plaintiff and defendant bank. That the plaintiff's right of action is against the First National Bank of Lake Charles, and that bank alone could sue the defendant bank. Counsel cite Martin v. Hibernia Bank & Trust Co., 127 La. 301, 53 So. 572, in support of this contention.

It is extremely doubtful whether the principle sustained in the cited case is applicable to the facts of this case. In that case the suit was against a third bank for damages for negligence in not sending the paper to another bank for presentation instead of sending it directly to the drawee bank, which refused payment and made an assignment in an insolvent condition.

As the bank with which the check had been deposited gave the depositor credit and had indorsed the check in blank and forwarded it to a second bank for collection and credit, and which second bank likewise indorsed the paper and forwarded it to a third bank for collection and credit, it was very properly held that the first bank was liable to the depositor and that there was no privity of contract between the depositor and the third bank. The holding would doubtless have been different if the paper had been returned to the depositor and he had sued the drawee bank or the bank which had actually collected the draft.

In the instant case, the checks had been paid and the drawee discharged and the suit is directly against the bank which had received the proceeds of the checks and is for the particular money and exchange which the defendant bank had received for plaintiff's checks.

In these circumstances, the principle announced in the case, supra, is not applicable.

As we have already noted, when the bank commissioner took charge of the defendant bank there was cash in the vault to the amount of $11,078.76, which represented the residuum of collections, receipts, and deposits on that and previous days, including the $5,000 received from the Bank of Acadia.

[2] This $5,000 was not kept separate and apart from the balance of the cash on hand, but was mingled therewith. The assistant cashier testified that this money was mingled with the other cash, and that after its receipt on the evening of its receipt some $4,500 was paid out, and that he could not tell what part, if any, of said $5,000 was still in the bank when it closed.

The president of the plaintiff company testified that he could not identify the particular money, and this is perfectly obvious.

Without such identification, the plaintiff cannot be paid by preference out of the money found in the bank.

The case would have been different if the particular $5,000 had been kept separate in the vault from other moneys belonging to the bank, in such a manner as to have been susceptible of reasonable identification.

In so far as concerns the demand to be paid by preference out of the cash on hand when the bank failed, the case must be governed by the principle announced in Young, Bank Examiner, v. Teutonia Bank & Trust Co., 135 La. 66, 64 So. 984, and authorities there cited.

[3] The other demand of the plaintiff presents quite a different situation.

It is admitted that the exchange for $8,740.77 was in the bank when its doors were closed. That said exchange had not been collected and its proceeds mingled with the other assets or funds of the bank. The exchange represented, in part, the proceeds of the three drafts of the plaintiff and the two drafts in which Welsh had owned an interest, but which interest had been acquired by the plaintiff. The only outstanding interest in the exchange referred to is that of the owners of the checks for $1,509.51, which were included in and formed a part of the said exchange, and the $5,000 in money.

As before stated, the payment of the exchange had been stopped by the Bank of Acadia as soon as it was informed of the closing of the Crowley Trust & Savings Bank.

The Bank of Acadia had no special interest in stopping payment. It would have been discharged had the exchange gone its regular course and had been paid by the drawee. The action of the Bank of Acadia was manifestly to protect the owners of the fund represented by said exchange. The exchange nevertheless is a valid outstanding obligation of the Bank of Acadia.

It is susceptible of perfect identification. It has not been confused with the funds of the defaulting bank.

That bank, its creditors, depositors, or stockholders have no legal or equitable interest in said exchange, and it would be manifestly unfair and unjust to have the bank commissioner to collect said exchange and to make it an asset of said bank and thus enrich the said creditors, depositors, and stockholders at the expense and injury of the plaintiff.

To so hold would entail upon the plaintiff the loss of the proceeds of its crop of rice, amounting to over $12,000 subjected only to credit for such dividends as the assets of the defunct bank may be able to pay.

All of the cases to which we have been referred are cases wherein the parties sought to be paid by preference out of the proceeds in the bank or in the possession of an agent, and relief was denied on the doctrine of the confusion of funds in such a manner as to prevent reasonable identification.

In none of the cases cited and in no case we have been able to find has that doctrine been held to apply, where the particular fund claimed could be identified or where the proceeds of a draft or exchange has not lost its identity by confusion or the mingling with other funds in the bank or in the hands of an agent.

In the Young v. Teutonia Bank Case, cited supra, the opponent demanded to be paid from money in the vault of the insolvent bank, the proceeds of a check which had been forwarded to defendant bank for collection and collected by it and the proceeds of which had been mingled with its own funds.

The court said, quoting from the previous case of the same style in 134 La. 879, 64 So. 806:

"The custom of banks is to mingle collection money with their general funds, and to treat it as their own, and to send their own checks in remittance.

"The great weight of authority in other jurisdictions is to the effect that banks and other senders of paper for collection and remittance are presumed to know of this custom and to intend to abide by it, unless collections are sent with special instructions to the contrary; and that the operation of this custom is to transfer the ownership of the money to the bank, the customer becoming, the moment money is thus mingled, a mere creditor of the bank for the amount."

In the case from which the above quotation is taken, the court reviewed the authorities, and particularly the case of Longbottom's Executors v. Babcock, 9 La. 50, one of the leading cases on the subject.

And, quoting from the case In re Louisiana Savings Bank & Safe Deposit Co., 40 La. Ann. 519, 4 So. 304, said:

"The counsel for opponents claim that the identification of the fund was sufficient, because the bank, when it failed, had in its possession cash exceeding in amount the deposit. We have before adverted to the extreme improbability that any part of this money was part or parcel of the funds originally deposited; but the authority of the case in 9 La. [50] above cited, is, as we have seen, directly opposed to such contention."

The court in the 134 La. Case considered the 9 La. Case as stare decisis on the following principles:

(1) That the principal has no lien or pledge on the property of the agent.

(2) That the agent is bound to account for the money of his principal, but not to restore it in kind.

(3) That the principal cannot recover money in the hands of his agent in the absence of proof that the sum is the same money received from the principal.

(4) That, in a case of a special deposit, the exercise of the privilege of the depositor depends on proof of the identity of the thing deposited.

It may be conceded that if the defendant bank had forwarded the exchange in question to the bank drawn on and that bank had credited the defendant bank with same, then there would have been a mingling or confusion of funds and the doctrine of the cited cases would have been applicable, as it is to plaintiff's demand for the money in the vault of the bank.

But the exchange has never been collected. Its payment is suspended. It forms no part of the assets of the bank and its proceeds should be applied to plaintiff's claim, to the extent of its interest therein as heretofore indicated, in preference to any other claimant.

[4] The plaintiff is likewise entitled to be paid the balance of its claim in due course of the liquidation of the bank.

The judgment appealed from is therefore set aside, and it is now ordered that plaintiff have judgment against the state bank commissioner recognizing said plaintiff to be the owner of the exchange drawn by the Bank of Acadia in favor of the Crowley Trust & Savings Bank for the sum of $8,740.77 to the extent of $7,775.62, and that said amount be paid to said plaintiff when and if said exchange is collected.

It is further ordered that the plaintiff have judgment against the defendant for the further sum of $4,455.64, to be paid in due course of liquidation of said bank, and that the defendant pay all costs of this suit.

O'NIELL, C. J., of the opinion that the judgment of the district court should be affirmed.