ZION v. HIBERNIA BANK & TRUST CO.

---

(May 23, 1927. Opinion and Decree.)

---

(Syllabus by the Court)

1. **Louisiana Digest — Obligations — Par. 182; Banks and Banking—Par. 47, 56.**

Where a bank contracted to cable one hundred and ten dollars to Russia on April 1, 1917, and failed to deliver the money to payee, to sustain its defense, when sued for return of the money, it must prove that it employed reasonably expeditious means to carry out the contract.

Appeal from Civil District Court, Division "E". Hon. Wm. H. Byrnes, Judge.

Action by Sam Zion against Hibernia Bank & Trust Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Sol Weiss, of New Orleans, attorney for plaintiff, appellee.

McCloskey & Benedict, of New Orleans, attorneys for defendant, appellant.

I respectfully dissent. C. C. 3008.
      (Signed) CHAS. F. CLAIBORNE,
                                    Judge.

JONES, J. This is a suit for one hundred and ten ($110.00) dollars, which plaintiff turned over to defendant on April 11, 1917, to be cabled to Jenia Aronow in Russia.

Plaintiff alleges that defendant failed either to transmit the money or to return it to petitioner and is therefore indebted to him for said amount.

Defendant admits receipt of the money, but denies all indebtedness. Further answering, respondent averred that on the date mentioned, in consideration of one hundred and ten ($110.00) dollars deposited with it, it agreed to "transmit by cable to Jenia Aronow in Russia the said one hundred and ten ($110.00) dollars, payment to be made in rubles after deducting all charges", that "in accordance therewith and acting through its agents respondent transmitted said sum to its agent in Petrograd, the National City Bank of New York at the then rate of exchange, which amounted after deducting charges of transmission to three hundred and forty-nine (349) rubles, sixty-five (65) kopecks; that Jenia Aronow could not be located and meanwhile rubles declined; that it informed plaintiff in April or May, 1918, that it could not locate payee and was therefore unable to make payment"; that plaintiff then demanded his money, and defendant wrote its agent, the National City Bank, to cancel order of payment and credit respondent with said amount; but meanwhile the rubles had so fallen in value that they brought, when sold, only forty-three and 71-100 ($43.71) dollars, which amount was tendered to plaintiff and refused; that respondent faithfully performed its contract and plaintiff's loss is due to fall of rubles; that defendant has always been and is still ready to pay plaintiff forty-three and 71-100 ($43.71) dollars, but plaintiff should pay costs of this suit.

There was judgment for plaintiff and defendant has appealed.

Although the answer shows that defendant recognized the National City Bank as its agent throughout the transaction, defendant says in his brief: "Plaintiff's cause for complaint, if any, is against the National City Bank of New York and not against the defendant."

It is true that plaintiff testified that Mr. Villere, vice-president of the bank, had told him that the Hibernia Bank had no agent in Russia and that it would forward his money to the National City Bank of New York.

Mr. Villere testified on direct examination that he impressed upon plaintiff that the National City Bank was handling the transaction for his account, but on cross-examination he testified that the National City Bank, in this transaction, acted as the agent of the Hibernia Bank.

The record contains four letters offered by defendant from New York bank to defendant, but in the letters plaintiff's name is never mentioned, but, on the contrary, offer is twice made to cancel payment, provided defendant will give written guarantee to hold New York bank harmless against loss. No copies of defendant's letters to the New York bank were offered in evidence.

The only documents in the record offered by plaintiff bearing on this matter are the receipt and a letter from defendant to plaintiff of date April 28, 1919.

The receipt reads as follows:

"New Orleans, April 11, 1917.
"Received from Sam Zion, 1941 N. Rampart Street, one hundred ten ($110.00) dollars to be cabled to Jenia Pinchusova Aro-

now at Beresau, Poltawsky (hyb) Kievo Poltarsky R. R. Russia after deducting all charges through Nat. City Bk., N. Y.

> "HIBERNIA BANK & TRUST CO.,
> (Signed) "PAUL VILLERE,
> "Asst. Cashier."

In the letter of April 28, 1919, Mr. Villere quotes from the National City Bank's letter to him of April 28, 1919, in part as follows:

"In view of the great difference in the rate, at which this transfer was sold you, and the rate at which we can now refund the same, we thought it well to write you regarding the matter."

Both of these documents confirm the position taken by defendant in its answer, namely, that the New York bank was acting as the agent of defendant, for defendant says that the money is to be cabled by it to Russia through the New York bank and the New York bank says that the rubles were sold for defendant not for Zion.

Furthermore the letter of plaintiff to defendant of August 2, 1918, a copy of which is in the record, shows that plaintiff relied on the defendant throughout, a trust that was natural under the circumstances as he had long been their depositor. Although he knew the money was to be sent through the New York bank, he never thought and under the circumstances had no legal reason to think that he was employing the New York bank as his agent.

After a thorough and careful study of the entire record we are of the opinion that the New York bank was the recognized agent of defendant, not of plaintiff, and that defendant is responsible to plaintiff for any loss caused by its agent.

This view is strengthened by the fact that in the case of Martin vs. Hibernia Bank & Trust Co., 127 La. 301, 53 South. 572, the Supreme Court held there was no privity of contract between the depositor and the sub-agent bank.

Defendant's main argument is that this transaction, which amounted to a special deposit, created the relation of bailor and bailee (not that of creditor and debtor) and limited his responsibility to that required of the usual bailee, namely, ordinary care and prudence.

In support of this argument he cites Cutler Hall & Co. vs. Exchange National Bank, 113 N. Y. 593, and Ruling Case Law, Vol. 3, p. 522, par. 150.

This last citation states that money deposited for cable to a foreign country is a special deposit and may not be mingled with the general funds of the bank, as the depositor is entitled to receive back the identical money deposited, the right of property remaining in the depositor.

In Cutler Hall & Co. vs. Exchange Bank, 113 N. Y. 593, plaintiff in New York City wishing to make a payment in Leadville, Colorado, and the defendant having refused to give a draft directly on a Leadville Bank, gave plaintiff the following letter:

> "New York, July 20, 1888.
> "Bank of Leadville,
> "Leadville, Col.
> "Your account is credited this day $500, received from Cutler Hall & Co. for use of J. Seymour Hall.—E. Burns, Cashier."

When J. S. Hall attempted to use the letter, the Bank of Leadville had failed, and later plaintiff sued for return of his five hundred ($500.00) dollars.

The New York Court of Appeals in deciding the case uses the following language:

"From that moment, the defendant became the depositary of a fund which was by its own agreement devoted to one particular purpose and to no other. If that purpose failed or became incapable of being affectuated or was recalled by plaintiffs, the absolute right to the moneys was in them and in no one else. The defendant's undertaking was to effect the payment of the sum deposited by plaintiff to Hall and at no time did the money become mingled in the general funds of the defendant or cease to be under the dominion for the purpose of its assumed agency. Its so-called letter of advice was equivalent to its certificate to its western correspondent of the deposit of a sum of money by the plaintiffs for the use of the person mentioned there. * * * When that payment was refused and the letter of advice was returned to plaintiffs, the defendant became at once liable to repay the money to plaintiffs. * * * No contractual relation existed between the plaintiffs and the foreign bank."

This decision, although holding that the fund was a special deposit, with which we fully agree, supports plaintiff on all other points.

Plaintiff, whose testimony shows him of but limited education, says that he called at the bank some two or three months after he left the money, to ask an explanation, as he had received a letter from his Russian relatives at the address given saying nothing had been received; that he was told Mr. Villere was in France and no one knew about it; that about fifteen days after his return Mr. Villere showed him papers which he did not understand, and later he refused to accept forty-three ($43.00) dollars in full settlement; that

his relatives resided all the time at the given address; that rubles were not mentioned by either party at the time receipt was given, but he had put in pencil three hundred and forty-nine (349) rubles, sixty-five (65) kopecks, on the receipt on his second visit to the bank when he was told the amount, and had later erased it.

The latter statements are confirmed in part by evidence on the receipt of a pencil erasure and by a pencil letter in the record from Berezan, October 30, 1917 (English date November 14, 1917), stating money hadn't come. The bank's copy of the receipt was not offered in evidence, though referred to as showing amount of rubles.

Mr. Villere says he left for France about September 1, 1917, having told plaintiff prior thereto why matter was delayed. He also says that he tried to dissuade plaintiff, on account of difficulty of sending money in war time, but plaintiff insisted. He further explained that it was possible, but not practical, to send dollars at that time, and that he had stated to plaintiff that his bank would have to send rubles through the New York bank.

The copies of the letters from defendant to New York bank, though referred to in evidence, were not offered or filed, and the four letters from the New York bank to defendant show the following:

The first, dated March 16, 1918, says Petrograd Branch had written there was no postoffice at Beresau, through which transfer could be made, but it had written to payee for instructions and would give further information in a short time.

The second, dated May 4, 1918, says it had no further news, but "if you so desire, we can write Petrograd asking them

to cancel the payment and on receipt of their reply we will re-credit you, or if you will give us a written guarantee to hold us harmless against any loss which we might sustain should this payment be effected before advice of cancellation is received by our branch, we will re-credit you immediately".

The third, dated November 23, 1918, says Petrograd Branch had closed temporarily, without giving further information, and repeats above offer to cancel with proper guarantee.

The fourth, dated April 18, 1919, says they are now in position to buy back the transfer at twelve and one-half (12½c) cents, original conversion having been made at twenty-nine (29c) cents, and ask further instructions.

It is thus seen that the evidence fails to sustain the allegations of the answer to the effect that the payee had changed its address and that defendant had upon request of plaintiff in April or May, 1918, instructed the New York bank to cancel order.

Although we are fully cognizant of the great difficulty of transmitting money to Russia at that time on account of the war and should hesitate to hold the bank responsible, if it had proved the allegations of its answer, there appears there is no alternative. On this point see:

Vincinzo vs. Richwood Bank & Trust Co., (W. Va.), 117 S. E. 822;

Sapain vs. Irving National Bank, 196 N. Y. Sup. 141;

Chemical National Bank vs. Equitable Trust Co., 194 N. Y. Sup. 177.

For above reasons the judgment is affirmed.