No. 284

First Circuit

---

## HAAS ET AL. v. OPELOUSAS ST. LANDRY BANK & TRUST COMPANY

---

(May 8, 1928.   Opinion and Decree).
(June 12, 1928.   Rehearing Refused.)
(July 20, 1928.   Writs of Certiorari and
Review granted by Supreme Court.)
(November 26, 1928.   Writs of Certiorari
and Review recalled by Supreme Court.)

---

Jno. W. Lewis, of Opelousas, attorney for plaintiffs, appellants.

Dubuisson, Perrault and Burleigh, of Opelousas, attorneys for defendant, appellee.

LECHE, J.   On January 18, 1926, plaintiffs deposited in the defendant bank, a draft for $1969.00 drawn on the American Rice Milling Company of Crowley, La., for credit to their checking account.   The draft had been drawn by B. C. Sloan and was attached to a bill of lading.   It represented the price of rice sold by Sloan to the American Rice Milling Company.   The rice had been shipped by Sloan to Crowley, "shipper's order notify American Rice Milling Company."

The draft was sent by defendant to the Crowley Trust and Savings Bank for collection.   It was paid on January 21, 1926, and the Crowley Trust and Savings Bank, remitted to defendant its own check, drawn on the Marine Bank & Trust Company, New Orleans, to cover the amount collected.   Defendant received the check on the Marine Bank, on January 23, 1926, but on the morning of the same day, the Crowley Trust & Savings Bank failed to open its doors, and went into the hands of a receiver.   The result was that the amount of the draft, $1969.00, is considered lost by the failure of the Crowley Trust & Savings Bank, and the question in this case, is, who must bear that loss, plaintiff or defendant.

There was no special agreement entered into by the parties on January 18, 1926, when the draft was deposited by plaintiffs in the defendant bank.   It is only reasonable to assume that the deposit was made and accepted, to be dealt with in the ordinary course of trade and according to custom.   Plaintiffs were large depositors in the defendant bank, in which it is said that their deposit account reached as high, at times, as $50,000.00.   They are stockholders in the bank and both they and their manager and agent are familiar with banking customs.   The defendant accepted the draft and sent it out for collection, in the usual way and without unreasonable delay.   No negligence can be charged to the defendant.

It sent the draft to another bank which it had no reason even to suspect as being unreliable or insolvent and acted promptly and in good faith.

In support of its non-liability, the defendant contends that its service in the collection of the draft was free, and that it should not be held responsible for the failure of the Crowley Bank whose insolvency it had at the time, no means to ascertain and whose standing was then not even open to suspicion. It contends further that it acted with prudence and promptly, and is not chargeable with the least fault or negligence. On the other hand, plaintiffs say that the large checking account which they maintained in the bank, furnished it a very remunerative consideration for this service, but they fail to allege and show any specific negligence on the part of defendant.

The implied agreement between a bank and its depositors in our opinion, is not prompted altogether by altruistic motives on either side. The depositor is relieved of the burden of holding his funds to insure their safekeeping, and he enjoys at the same time the convenience of drawing upon the same in such amounts and at such times as he may wish, and in some instances by special agreement 'he additionally receives interest on his daily balances. The bank or depositary, on the other hand, uses these funds, and it derives revenue therefrom in making loans and discounts. The benefits therefore in the implied agreement between the depositor and the depositary may be said to be mutual.

It was held in Clason & Co. vs. New Orleans, 46 La. Ann. 1, 14 So. 306, where the sole question related to taxation, that the relation between the depositor and the bank, is that of creditor and debtor. But that must be taken in the sense that every depositor is the creditor of the depositary to the extent that the latter owes the former the duty of returning the thing deposited, or its equivalent. The Civil Code provides that the depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property. It must also be observed that although the depositary does not become the owner of the thing deposited, it is equally true that a bank receiving money on deposit it entitled to use that money under such restrictions as are provided for in the banking laws of the country, or else it could not earn revenue sufficient to maintain its existence.

As a matter of fact, in this case, there is nothing to take it out of the class of ordinary agreements between a bank and its depositors, and it was undoubtedly understood by both parties that the draft was taken for collection through the ordinary channels, and its proceeds when collected, were to be kept on deposit subject to be used by the bank and subject to be drawn by the plaintiffs, according to banking customs. The fact that the defendant gave plaintiffs a receipt or deposit slip on January 18, 1926, does not mean that it received the $1969.00 in currency, or that it acquired the ownership of the draft or guaranteed its collection. In fact there are printed in clear type, on the face of the deposit slip the following words: "All checks and drafts are credited subject to final payment." The only guarantee that plaintiffs had any right to expect and which is implied in the contract of deposit, was that defendant would use the same diligence to collect the draft and to preserve its proceeds, as it would if the draft had actually belonged to it.

It appears unreasonable that the defendant bank should be held to be an insurer of the safety of the draft and bill of lad-

ing, while in transit and in process of being collected, or of the proceeds before such proceeds were actually received by it and placed in its vault. The Code merely requires diligence and in the present case, there was diligence on the part of the defendant depositary.

To say that the loss which was caused by the fault of the Crowley Trust & Savings ·Bank, must fall on the one of the two innocent parties in this suit who might have prevented the loss, is merely begging the question. For it is impossible to conceive how either of them might have guarded against an occurrence which it was impossible for either of them to foresee.

Learned and industrious counsel on both sides, who have presented their views in a masterly and skillful manner, concede that there are two lines of decisions among the Courts of the country, on the subject of the responsibility of a depositary bank towards its depositor, in the collection of drafts, checks and other commercial paper of a like nature. One line of decisions holds in substance, that the intermediate collecting agencies between the depositary bank and the drawee of the paper, are the agents solely of the depositary bank and that the depositary is liable for the fault and negligence of such collecting agencies, and the other holds that such intermediate collecting agencies are the agents of the depositor and therefore that the depositary bank is not liable for their fault or negligence. Each of the learned counsel then claims that the decisions of the Supreme Court of Louisiana, have aligned this State with the one or the other line of decisions accordingly as it may be favorable to his side of the controversy in the present case.

There are two decisions of the Supreme Court of Louisiana upon that subject and they apparently conflict with one another, so that it cannot be said that we have any established or crystallized jurisprudence placing this State in line with one or other theory adopted by the Courts of our sister States. These two decisions are, Ezekiel Hum vs. The Union Bank of Louisiana, 4 Robinson 109, and Martin vs. Hibernia Bank and Trust Company, 127 La. 301, 53 So. 572.

The conflict between these decisions consists in the fact that in the Martin case, the organ of the Court, says in effect that there is ·no privity between the sub-agent and the principal unless the principal has been expressly vested with the power to substitute someone, (called a sub-agent) in his place, that if a sub-agent is thus appointed without special authority from the principal, the sub-agent owes no duty to the principal as there is no privity between them. He then held, if we understand the decision correctly, that Martin, owner of the check, had no right of action against the Hibernia Bank for its fault or negligence as sub-agent of the depositary bank, the bank of Arcola. In the syllabus of the decision the Court says:

"A bank receiving a check for collection is liable, under the commercial law, to the depositor for any loss occasioned by the conduct of any sub-agent employed by it to assist in making the collection; but in such case 'there is no privity of contract between the depositor and the sub-agent."

The bank which received the check for collection in that case, was the Arcola bank. The Arcola bank was not a party to the suit and its liability to Martin was not an issue in the case. The important point however, which we understand to have been decided in the case is, that the depositary bank alone is responsible to the depositor for the fault or negligence of the other bank or banks who have handled the check or draft for collection at the request of the depositary bank.

On the other hand, Judge Martin, who was the organ of the Court in the Hum case, concedes that under Art. 3007 C. C. (old number) 2976, the agent is answerable for the person substituted by him to manage in his stead, if the procuration did not empower him to substitute, but he says that this is an affirmative pregnant with the negative, that he is not answerable if the procuration did empower him to substitute. This power, he says is implied, whenever he knows that the agent will necessarily be obliged to act by a substitute. There is no doubt that plaintiffs in the present case were fully aware of the customs and usages of the bank, and they knew that the bank could not go in person to Crowley to make the collection, and that it would resort to the ordinary mode of collection, to-wit: The agency of a bank at Crowley where the draft was made payable. The power of using another bank at Crowley as a substitute, was therefore implied.

It is passing strange that if the Supreme Court had intended to change the law as construed by it in the Hum case, it made no reference or allusion to that case in the decision of the Martin case. It is apparent that the Hum case was not brought to their attention. The conflict between the two decisions appears irreconcilable, and believing that the decision in the Hum case accords better with the law and especially with the equities in the present case we believe that we are authorized to adopt it as the law governing the present case.

In the Martin case one of the outstanding facts was that the Hibernia Bank sent the check for collection to the bank in Cleveland, Miss., upon which it was drawn. Both the District Court and the Orleans Court of Appeal held that the Hibernia Bank was responsible for this act of imprudence, when there was another bank in Cleveland by whom the collection might have been made, but the Supreme Court reversed both of these decisions on the ground hereinbefore stated, that Martin had no right of action against the Hibernia Bank, a sub-agent employed by the Bank of Arcola, without express authority from Martin.

Since the rendition of the Martin decision in 1910, the Legislature adopted in 1916, Act No. 85, page 204, absolving a bank from liability when sending a draft or check for collection to the bank on which it is drawn. That act seems to have been adopted to clarify the situation brought about by the Martin decision. In 1926, Act 86, page 125, was adopted by the Legislature, also absolving a bank from liability for the fault or negligence of its correspondents in the collection of negotiable paper. But this act cannot apply to the present case which arose in January, 1926.

It might be contended that if the law as we construe it in this case, was in existence prior to the session of the Legislature in 1926, there was then no necessity for the Legislature to adopt Act No. 86. It can, however, be truthfully said that the Martin decision had created some doubt as to what the law really was at that time, and the legislative purpose was to eliminate all doubt about the whole matter.

Believing then that plaintiffs impliedly gave defendant authority to employ a sub-agent in the collection of their draft on the American Rice Milling Company at Crowley, that defendant acted promptly and without fault or negligence in its duties as a collecting agent and depositary of plaintiffs, and that both the law and the equities are with defendant, it is ordered that plaintiff's demand be rejected and the judgment of the District Court affirmed.