**(119 So. 872)**

No. 28799.

## In re BANK OF WHITECASTLE.

Jan. 2, 1929.

Dupont & Dupont, of Plaquemine, for appellants.

Paul G. Borron and S. R. Hebert, both of Plaquemine, for appellee.

BRUNOT, J. There is complete agreement as to the facts. The defendant bank was in an embarrassed condition. Its president was in New Orleans endeavoring to negotiate a loan to tide over its immediate difficulties. Under the circumstances, and upon the advice of its counsel, every deposit received on the day prior to and on the morning of the day the bank closed was set aside and placed in a separate package, with the name of the depositor written thereon, together with a notation identifying the contents of each package. This proceeding was adopted in order that the identical deposits might be returned to the respective depositors, if the effort to secure the necessary loan to enable the bank to continue its business should prove unsuccessful. To prevent the critical situation of the bank from being accentuated and its im-

mediate failure invited, the depositors were not informed of the situation. Their deposits were received in the ordinary way and were entered in the depositors' pass books, or duplicate deposit slips were issued therefor, but none of these deposits were entered on the books of the bank.

Failing to secure the required loan, the state bank commissioner was notified, and that official closed the bank and proceeded to liquidate its affairs. Upon ascertaining the status of the deposits mentioned, and upon demand upon him for the return of said deposits to their respective owners, the state bank commissioner suggested a court order authorizing his compliance with the said demands. Thereupon the state bank commissioner was ruled into court to show cause why the aforesaid demands upon him should not be complied with. Paragraphs 4 and 7 of this rule, indirectly, but sufficiently, allege the insolvent condition of the bank on the day prior to and on the day it was closed. The rule was tried, and, for written reasons assigned by the learned trial judge, the demands of the plain-, tiffs in rule were rejected, and the rule was dismissed at their cost. From this judgment the plaintiffs in rule appealed.

Our reading of the record has led us to the conclusion that the judgment appealed from should be reversed.

■ The facts conclusively show that, when the deposits were received from the plaintiffs, the officials of the bank knew, at that time, that the failure of the bank was imminent, and the possibility of obtaining, from any source, the necessary money to meet its immediate obligations was too doubtful to justify their mingling the deposits made by the plaintiffs in rule with the money then in the bank's vaults. They knew that the bank was then "in failing circumstances," if not actually insolvent. It is shown that the commissioner of state banks took charge of the bank, closed its doors, and began the liquidation of its affairs within one hour after some of the plaintiffs in rule had made their deposits. These facts and other admitted facts of similar or significant import, in our opinion, sufficiently show that the bank was insolvent on the day before and on the day its doors were closed. The only evidence in the record tending to rebut this conclusion is an inventory taken from the books of the bank as of the day on which it was closed. This inventory shows assets totaling the liabilities. It is not a detailed inventory, and it was filed without explanation. Such an inventory, unexplained, cannot be accepted as an accurate reflection of the solvency of the bank on that date. It is not definitely shown, but it may be gathered from the record that, to some extent, the bank was the possessor of what is termed "frozen assets." Such assets might be of little actual value, and the possibility of promptly realizing upon them, in an emergency, is, at least, extremely doubtful.

"Insolvency generally means the condition of a person who is unable to pay his debts as they become due in the ordinary course of business. According to this definition, a person may be insolvent though he has assets exceeding in value the amount of his liabilities." 16 Am. & Eng. Ency. of Law, p. 639.

There is a long list of authorities cited in the note to the foregoing definition, to which we refer.

In the case of Sabine Canal Co. v. Crowley Trust & Savings Bank et al., 164 La. 33, 113 So. 754, we held, quoting from the syllabus, that:

"Where collecting bank received exchange in payment of draft, payees may recover such exchange from state bank commissioner after closing of collecting bank."

In our opinion, which was handed down by Justice Thompson, the organ of the court, it is said:

"All of the cases to which we have been referred are cases wherein the parties sought

to be paid by preference out of the proceeds in the bank or in the possession of an agent, and relief was denied on the doctrine of the confusion of funds in such a manner as to prevent reasonable identification.

"In none of the cases cited and in no case we have been able to find has that doctrine been held to apply, where the particular fund claimed could be identified or where the proceeds of a draft or exchange has not lost its identity by confusion or the mingling with other funds in the bank or in the hands of an agent."

In this case there was no commingling of the deposits made by plaintiffs in rule with the bank's funds. Such a thing was not contemplated by the officials of the bank. On the contrary, they took extra precaution to preserve the identical deposits intact pending the result of their application for a loan sufficient to meet the immediate needs of the bank, and this was the status of said deposits when the bank closed.

The accounts of some of the plaintiffs in rule were overdrawn when the deposits they seek to recover were made. As to these depositors there is a strong presumption that the deposits were made primarily to take care of their overdrafts, and, as there is nothing in the record to rebut this presumption, we think it should prevail.

For these reasons the judgment appealed from is reversed, and it is now decreed that the commissioner of state banks of the state of Louisiana first deduct from the package containing the deposit of each plaintiff in rule, whose checking account with the bank is overdrawn, a sum sufficient to balance said account, and thereafter, except as to said deductions, to return to the respective plaintiffs in rule the deposits made by them, in the Bank of White Castle, on January 31, 1927, and February 1, 1927, the costs of appeal to be paid by appellee.